UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
PROGRESSIVE PLAN ADMINISTRATORS, INC.,
and USI INSURANCE SERVICES LLC,

                     Plaintiffs,

                v.

WILLIAM J. HUEBER, KINLOCH HOLDINGS, INC.,
GENATT ASSOCIATES, INC., and KINLOCH
CONSULTING GROUP, INC.,

                     Defendants.
------------------------------------------------------------------------x

Case No.
08 Civ. 2488 (AKH)(KNF)

**ECF CASE**

**NOTICE OF MOTION**

      **PLEASE TAKE NOTICE** that, upon the annexed Affidavit of Blair C. Fensterstock, sworn

to on April 14, 2008, and upon the exhibits attached thereto, the accompanying Memorandum of

Law in support of this motion, and the pleadings herein, Defendants Kinloch Holdings, Inc., Genatt

Associates Inc., and Kinloch Consulting Group, Inc. ("Moving Defendants"), will move this Court,

before the Honorable Alvin K. Hellerstein, United States District Judge, on May 14, 2008, at 10:00

am, for an Order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissing the

Complaint as against the Moving Defendants.

Dated: New York, New York
       April 14, 2008

FENSTERSTOCK & PARTNERS LLP

By:_____
      Blair C. Fensterstock
      Jeanne M. Valentine

      30 Wall Street, 9th Floor
      New York, New York 10005
      Telephone: (212) 785-4100

      *Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
PROGRESSIVE PLAN ADMINISTRATORS, INC.,                   Case No.08 Civ. 2488 (AKH)(KNF)
and USI INSURANCE SERVICES LLC,

                                         Plaintiff,      **ECF CASE**

        - against -

                                                        **AFFIDAVIT OF**
WILLIAM J. HUEBER, KINLOCH HOLDINGS, INC.,              **BLAIR C. FENSTERSTOCK**
GENATT ASSOCIATES, INC., and KINLOCH
CONSULTING GROUP, INC.,

                                         Defendants.
--------------------------------------------------------------x

STATE OF NEW YORK      )
                       ) ss:
COUNTY OF NEW YORK     )

        BLAIR C. FENSTERSTOCK, being duly sworn, deposes and says:

        1.      I am an attorney duly admitted to practice before this Court and am the Managing

Partner of Fensterstock & Partners LLP, counsel to Defendants.  I submit this Affidavit to place

the contents of documents before the Court in connection with the Memorandum of Law submitted

on behalf of Defendants Kinloch Holdings, Inc. Genatt Associates, Inc., and Kinloch Consulting

Group, Inc., in Support of their Motion to Dismiss Plaintiffs' Complaint.

        2.      Attached hereto as Exhibit 1 is a true and correct copy of Plaintiffs' Summons and

Complaint dated March 11, 2008.

        3.      Attached hereto as Exhibit 2 is a true and accurate copy of Defendant William J.

Hueber's Answer dated April 14, 2008.

Blair C. Fensterstock

Sworn to before me this
14th day of April, 2008

Notary Public

JEANNE M. VALENTINE
New York State Notary Public
No. 02VA6053190
Qualified in Queens County
Commission Expires 1/02/20___11

# EXHIBIT 1

⊗AO 440 (Rev. 8/01) Summons in a Civil Action

*Judge Hellerstein* UNITED STATES DISTRICT COURT

_____ Southern _____ District of _____ New York _____

PROGRESSIVE PLAN ADMINISTRATORS,
INC., and USI INSURANCE SERVICES LLC,

**SUMMONS IN A CIVIL ACTION**

V.

WILLIAM J. HUEBER, KINLOCH HOLDINGS,
INC., GENATT ASSOCIATES, INC., et al.

CASE NUMBER **08  CV  2488**

TO: (Name and address of Defendant)

Kinloch Consulting Group, Inc.
25 Melville Park Road, Suite 260
Melville, New York 11747

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Frederick D. Braid, Esq.
Colleen A. Sorrell, Esq.
Loren L. Forrest, Jr., Esq.
Holland & Knight LLP
195 Broadway, 24th Floor
New York, NY 10007

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON                              MAR 1 1 2008

_____                    _____
CLERK                                                              DATE

_____
(By) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |

| NAME OF SERVER *(PRINT)* | TITLE |
|---|---|
| | |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____
　　　　　　　　　Date　　　　　　　　　Signature of Server


_____
　　　　　　　　　Address of Server

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

Frederick D. Braid
Loren L. Forrest, Jr.
Colleen A. Sorrell
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007
Telephone (212) 513-3200
Facsimile (212) 385-9010



08 CV 2488

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

PROGRESSIVE PLAN ADMINISTRATORS, :
INC., and USI INSURANCE SERVICES LLC, :
                                                    :
                    Plaintiffs,                     :
                                                    :
        v.                                          :
                                                    :
WILLIAM J. HUEBER, KINLOCH HOLDINGS, :
INC., GENATT ASSOCIATES, INC., and      :
KINLOCH CONSULTING GROUP, INC.,         :
                                                    :
                    Defendants.                     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

        Plaintiffs Progressive Plan Administrators, Inc. ("PPA") and USI Insurance Services

LLC ("Services") (collectively "USI"), by its attorneys, Holland & Knight LLP, as and for its

Complaint against Defendants William J. Hueber ("Hueber"), Kinloch Holdings, Inc.

("Kinloch"), Genatt Associates, Inc. ("Genatt"), and Kinloch Consulting Group, Inc.

("Consulting") allege as follows:

## NATURE OF THE ACTION

        1.      This is an action to redress the intentional, egregious, and continuing harm that

the Defendants have caused and are continuing to cause USI as a result of Defendant Hueber

intentionally accessing a computer protected by the Computer Fraud and Abuse Act ("CFAA"),

without or exceeding his authorization, and thereby obtaining and converting confidential information for unfair competitive use and/or otherwise causing damage to USI. Further, Defendants have used this confidential information to pirate away USI Client Accounts. USI seeks compensatory damages of at least $20,000 for the CFAA matter, plus at least $140,000 for the unlawful solicitation of clients, as well as punitive damages, to be determined at trial, and attorneys' fees, due to the harm caused by Defendants' acts.

## PARTIES

2.    Progressive Plan Administrators, Inc. ("PPA") is a New York corporation, with its principal office located in New York, New York.

3.    USI Insurance Services LLC ("Services") is a Delaware corporation, and a wholly owned subsidiary of USI Holdings Corporation, with its principal office located in Briarcliff Manor, New York. It was formerly known as USI Insurance Services, and USI Services Corp.

4.    Hueber is a resident of West Islip, New York. He is a former employee and Vice President of Services at the New York, New York office. Hueber is now an employee of Kinloch Consulting Group, Inc.

5.    Kinloch Holdings, Inc. ("Kinloch") is a Delaware corporation duly authorized to do business in the State of New York, with an office located in New York, New York.

6.    Genatt Associates, Inc. ("Genatt") is a New York corporation, with its principal place of business located in New Hyde Park, New York, and is an affiliate of Kinloch Holdings, Inc.

7.    Kinloch Consulting Group, Inc. ("Consulting") is a Delaware corporation duly authorized to do business in the State of New York, with an office located in Melville, New York, and is an affiliate of Kinloch Holdings, Inc.

2

## JURISDICTION AND VENUE

8.      This Court has jurisdiction of the claims asserted herein under 28 U.S.C. §1331

(federal question) and 28 U.S.C. §1367 (supplemental jurisdiction) in that the claims set forth

herein either arise under 18 U.S.C. §1030 (CFAA) or are so related to it that they form a part of

the same case or controversy.

9.      Defendants are authorized to and have conducted business in the State of New

York at all relevant times, and Defendants' conduct in and affecting the State of New York

subjects Defendants to the personal jurisdiction of this Court.

10.      Venue is based on 28 U.S.C. §1391(b)(2) because a substantial part of the events

or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL BACKGROUND

### The Business of USI Companies

11.      Holdings, along with its subsidiaries (the "USI Companies"), is a diversified

insurance and financial services firm that provides services to specialized industries and a wide

variety of customers with products that include, for example, casualty and property insurance,

employee benefits insurance and counseling, wealth management advice, consulting and

administrative services related to retirement plans and employment benefit enrollment functions.

The USI Companies have more than 60 offices in 18 states, and more than 3,000 employees.

12.      In addition to its senior executives, the USI Companies rely on a select group of

account producers ("Producers") to, among other things, solicit and cultivate relationships with

the USI Companies' customers and thereby expand existing and/or develop new Client Accounts.

Producers are the lifeblood of the USI Companies as they produce the USI Companies' business.

### The Role of Producers

13.    Producers have the all-important responsibility of developing a portfolio of needs for each of the USI Companies' customers, and then identifying, marketing, and securing insurance policies from among the various providers in their universe of underwriters.

14.    The USI Companies provide Producers with support, education and the resources to ensure excellent services and continuing beneficial relations with the USI Companies' accounts.

15.    A Producer is given access to significant trade secrets and Confidential Information of both the USI Companies and of its customers and prospective customers. Specifically, the trade secrets and Confidential Information made available to Producers include, but are not limited to: types of policies, the expiration dates of policies, proposals to clients and prospective clients, insurance coverage descriptions, premiums, commission rates, fees and other terms and conditions of policies issued to or for the benefit of the USI Companies' customers; the USI Companies' customers' risk specifications and other characteristics, and claims loss histories; the USI Companies' customers' benefits and compensation programs and plans, including their design, funding and administration, demographic characteristics and any other information supplied by, or developed for, the USI Companies' customers; and financial information, including information set forth in internal records, files and ledgers, or incorporated in profit and loss statements, fiscal reports and business plans, and all financial data, pricing terms, information memoranda and due diligence reports. The USI Companies have a legitimate business interest in keeping these trade secrets and Confidential Information confidential.

4

## Hueber Employment with USI

16.    Hueber commenced his at-will employment at Services in New York City (Manhattan), New York on October 7, 2002, as a Producer.

17.    Hueber was subsequently named Vice President.

18.    As detailed in his offer letter, dated September 26, 2002, Hueber's offer was conditioned upon signing a Non-Solicitation and Non-Disclosure Agreement ("NSDA") with USI.

19.    The NSDA contains a provision which, in short, prohibits client solicitation up to 2 years after termination of employment.  Specifically, section 2(a) of the NSDA reads as follows:

> Except in the normal course of business on behalf of the Company or any Serviced USI Company, Employee agrees that Employee will not, directly or indirectly, solicit, sell, service, manage, provide, or accept any request to provide, or induce the termination, cancellation or non-renewal of, any USI Business from or by any person, corporation, firm or other entity: (i) whose account constituted a Client Account of the Company or such Serviced USI Company, at any time within the 24 months preceding the earlier of the date of such act or the date of termination of Employee's employment with the Company, (ii) who or which was a [sic] Active Prospective Client or an Active Prospective Broker Referral Source of the Company or such Services USI Company, as of the earlier of the date of such act or the effective date of termination of Employee's employment with the Company, (iii) who or which was a Broker Referral Source of the Company or such Serviced USI Company, at any time within the 24 months preceding the earlier of the date of such act or the date of termination of Employee's employment with the Company. The restrictions contained in this Section 2(a) shall apply from the date of this Agreement and thereafter until two (2) years after the effective date on which Employee's employment with the Company, or its successor in interest, terminates.  The term "indirectly" for purposes of this Agreement shall mean in part that the Employee shall not circumvent the spirit of these restrictions by attempting to accomplish indirectly what Employee is otherwise restricted from doing directly.

20.    The NSDA also contains a provision which, in short, prohibits employee

solicitation for 2 years after termination of employment.  Specifically, section 2(b) of the NSDA

reads as follows:

> The employee further agrees that Employee will not, directly or
> indirectly, (i) solicit the employment, consulting or other services
> of any other employee or independent producer of the Company or
> any Serviced USI Company or otherwise induce any such
> employees to leave the Company's or such Serviced USI
> Company's employment or to breach an employment or
> independent producer agreement therewith, (ii) employ any such
> individual during Employee's employment with the Company or a
> USI Company and for one year after such individual terminates
> employment with the Company or a USI Company, (iii) take any
> action, including without limitation, the making of disparaging
> statements concerning the Company or a USI Company or its
> officers, directors or employees, that is reasonably likely to cause
> injury to the relationship between the Company or a USI Company
> or any of its employees and customers, clients, Persons, Client
> Accounts, Broker Referral Sources, Active Prospective Broker
> Referral Sources and Active Prospective Clients, or (iv) interfere
> with the relationship between the Company and any employee, or
> between any USI Company and any USI Company employee.  The
> restrictions contained in this Section 2(b) shall apply from the date
> of this Agreement and thereafter until 2 years following the date on
> which Employee's employment with the Company or its successor
> in interest terminates.

21.    Section 2(c)(iii) of the NSDA specifically states that "[t]he Employee

understands, acknowledges and agrees that ... the provisions of this Section 2 shall survive the

termination of the Employee's employment with the Company or any Serviced USI Company."

22.    The NSDA defines Confidential Information as:

> any information concerning the business and affairs of a specified
> person or entity that is not already generally available to the public
> or enters the public domain through no fault on the part of the
> Employee and is proprietary to such person, including but not
> limited to:
>     (i)  identities of clients which did business with such person at
>     any time within the twenty-four (24) months preceding the date

6

of [de]termination, as well as the identity of any Active Prospective Client, Broker Referral Source and Active Prospective Broker Referral Source;

(ii) the identity, authority and responsibilities of key contacts at each such client, Active Prospective Client, Broker Referral Source and Active Prospective Broker Referral Source;

(iii) the types of services and insurance coverages, consulting, third-party administrative, employee communication, investment management, human resource and other services, provided or to be provided to clients, Active Prospective Clients, Broker Referral Sources and Active Prospective Broker Referral Sources and the internal corporate policies relating thereto;

(iv) the individual insurance policies purchased by or for clients, customer and Broker Referral Sources;

(v) the expiration dates, terms and conditions of such policies;

(vi) individual client's, customer's, Active Prospective Client's, Broker Referral Source's and Active Prospective Broker Referral Source's risk specifications or other characteristics including loss histories and claims experience;

(vii) service burdens of each such individual client, Active Prospective Client, Broker Referral Source and Active Prospective Broker Referral Source;

(viii) the identities of persons, markets or companies from whom or which insurance coverage or other commitments, benefits or services for clients are obtained, and the rates and/or fees with respect thereto;

(ix) the nature of benefits and compensation plans and programs, including their design, funding and administration, investment data, demographic characteristics and any other confidential information supplied by, or developed for, clients, Active Prospective Clients, Broker Referral Sources and Active Prospective Broker Referral Sources;

(x) operations manuals, prospecting manuals and guidelines, pricing policies and related information, marketing manuals and plans, and business strategies, techniques and methodologies;

(xi) financial information, including information set forth in internal records, files and ledgers, or incorporated in profit and loss statements, fiscal reports and business plans;

(xii) inventions, discoveries, devices, algorithms, computer hardware and computer software (including any source code, object code, documentation, diagrams, flow charts, know-how, methods or techniques associated with the development or use of the foregoing computer software);

7

> (xiii)    all internal memoranda and other office records,
> including electronic data processing files and records; and
> (xiv)   any other information constituting a trade secret under
> the governing trade secrets law.

23.    The NSDA also contains a provision which, in short, prohibits the disclosure of

Confidential Information, as defined therein.  Specifically, section 3 of the NSDA reads as

follows, in pertinent part:

> Employee hereby agrees that he or she will not directly or
> indirectly disclose to anyone, or use, publish, quote or otherwise
> exploit for the Employee's own benefit or for the benefit of anyone
> other than the Company or any Serviced USI Company, any
> Confidential Information, which the Employee acknowledges
> constitutes trade secrets under the Uniform Trade Secrets Act.
> Upon termination of the Employee's employment, the Employee
> shall deliver to the Company or any Serviced USI Company, as the
> case may be, all customer, client, Active Prospective Client,
> Broker Referral Source and Active Prospective Broker Referral
> Source lists, daily reports, files, notes, records, data, other
> documents and any other information under my control and that
> relate to, refer to, or concern the Confidential Information of the
> Company or any Serviced USI Company.

24.    Furthermore, the NSDA contains a provision which, in short, requires avoidance

of conflicts of interest and protection of USI's goodwill.  Specifically, section 2(c)(i)-(ii) of the

NSDA reads as follows:

> The Employee understands, acknowledges and agrees that: (i)
> throughout the period of the employment relationship hereunder,
> he or she will not perform any activities or services, or accept such
> other employment which would be inconsistent with this
> Agreement, the employment relationship between the parties, or
> would interfere with or present a conflict of interest concerning
> Employee's employment with the Company or any Serviced USI
> Company; (ii) the Company and the USI Companies have a
> legitimate interest in preventing the Employee from exploiting or
> appropriating the goodwill of a client or customer of the Company
> or the USI Companies which the Employee acknowledges and
> agrees has been created and maintained at the Company's and the
> USI Companies' expense and to the Company's and the USI
> Companies' competitive detriment and that the restrictive

8

covenants contained in this Section 2 and Section 3 are reasonable and necessary in all respects (including scope and geography) to protect this legitimate interest....

25.    By protecting USI Confidential Information and good will, and prohibiting solicitation and conflicts of interest, the NSDA serves to prohibit Hueber from engaging in unfair competition against USI.

26.    Hueber was an at-will employee subject to the Company guidelines in the USI Employee Handbook ("Handbook").

27.    The Handbook provides specific policies on Confidential Information, and Electronic Information Systems, including Appendix I, which covers the Electronic Information Systems (EIS) Policy thoroughly.

28.    All computers located at USI offices are connected to the Internet, and the EIS Policy applies to these computers in order to protect USI property and information.

29.    The EIS Policy particularly prohibits, among other things, "[p]roviding information about, or lists of, USI employees or other confidential or proprietary information ... to parties outside the Company," and "[t]he use of Subscription-based Services without Prior Approval."

30.    As an employee, Hueber was also subject to the USI Code of Business Conduct, which he acknowledged most recently on January 7, 2004.

31.    The USI Code of Business Conduct serves to reinforce USI's workplace policies and procedures, emphasizing compliance with ethics and use of good judgment.

32.    From time to time, USI has to issue litigation holds or implement other directives regarding document retention in connection with the litigation or threatened litigation.

33.    On October 19, 2004, the Legal and Compliance Department at USI issued a document preservation notice to all employees, including Hueber, regarding retention of any business-related documents in connection with an on-going investigation by the New York State Attorney General concerning certain practices in the insurance industry.

34.    On July 8, 2005, Magistrate Judge Patty Shwartz of the District Court of New Jersey issued an Order for Preservation of Documents, which applied to USI. To comply with this Court Order, USI re-issued its document retention order to all employees, including Hueber, regarding retention of business-related records and documents. The matter has since been dismissed from the District Court of New Jersey, but an appeal is pending in the Third Circuit at this time.

35.    On May 14, 2007, a reminder preservation order e-mail message (the original order having gone into effect October 19, 2004) was sent from the Legal and Compliance Department at USI to all employees, including Hueber.

36.    The reminder preservation order e-mail stated that the "preservation order remains in place until further notice" and applies to "all business-related documents saved on USI's computer system, as well as business-related records and documents saved on an employee's personal computer," "including but not limited to emails, notes, correspondence, calendars and other records."

37.    The reminder preservation order e-mail also mentioned that USI was subject to a court order requiring the preservation of all business-related documents.

38.    Hueber had no authorization to destroy any data, and in fact was specifically prohibited from doing so by the preservation orders issued by USI, as well as by Court Order.

10

39.    If USI is compelled by the Third Circuit, or other court or agency of competent jurisdiction, to take measures to restore the data deleted by Hueber, USI will incur significant costs for performing, or hiring an outside source to perform, such research and restoration, in an amount yet to be determined, but estimated to be about $150,000.

**Hueber Termination of Employment with USI**

40.    On July 5, 2007, Hueber submitted a letter of voluntary resignation to Michael Grant at Services.

41.    Hueber's last day of work was July 5, 2007.

42.    Hueber attended an exit interview with Christopher Cosgrove, the Regional Chief Human Resources Officer, on July 5, 2007.

43.    During the exit interview, Hueber acknowledged that he knew he had continuing obligations to USI under the NSDA.

44.    Hueber is and continues to be bound by the NSDA.

**Hueber Illegal Activities at USI Prior to Termination of Employment**

45.    After Hueber's departure, in mid-July 2007, USI discovered that, while still employed by USI, he had deleted thousands of files from the USI computer system, and had used his USI e-mail account to send multiple documents that resided on USI computers to his own personal Optonline e-mail account by e-mail attachment.

46.    The Information Technology (IT) department at USI discovered that on June 4, 2007, at 10:01am, Hueber had accessed and e-mailed out to his personal email account, from a USI computer, 36 Excel and Word documents that resided on a USI computer or computer system.

11

47.    The IT department at USI discovered that on or about July 5, 2007, around noon time, Hueber made mass deletions of files on the USI computer system, and estimated that there were more than 11,000 documents deleted during a time period of about 84 minutes.

48.    Upon information and belief, while Hueber was still employed at USI, he acted as an agent for Kinloch, or one of its affiliates.

## USI Engages Vendor for Technical Assistance and Analysis

49.    In late July 2007, USI engaged Stroz Friedberg, LLC to provide technical services and forensic analysis of the computer Hueber used while employed at USI, and of certain Company backup tapes or devices.

50.    Stroz Friedberg performed an imaging of Hueber's USI laptop computer, searched for evidence of his e-mailing outgoing messages, attaching any USB port devices, applied key word searches, gathered information on what was copied, deleted and accessed.

51.    USI incurred costs during July and August 2007 due to the analysis done by Stroz Friedberg, which exceeded $5,000 and is currently calculated at more than $20,000.

52.    USI also incurred attorneys' fees in connection with the analysis of computers due to Hueber's mass deletions and disbursement of documents by e-mail.

53.    Stroz Friedberg was able to recover a copy of Hueber's June 4 e-mail, which revealed that among the 36 documents e-mailed out as attachments were items such as prospects lists, call logs, sales teams assignments lists, a telemarketing sheet, as well as Hoovers services data (a database manager that provides prospect research information about potential clients; USI paid for a license to use that service and Hueber had no independent right to use that service but for the benefit of USI), which was accessed and compiled through use of USI's account.

54.    The prospects list attachment named "Top 25 Prospects - July 06" contains columns labeled "Company Name," "Contact," which lists the first and last name of the person contacted at the target company, and "Strategy – Plan of Attack," which contain details such as where a company's current insurance is purchased, the renewal dates, notes such as "wants me to call her in August," and "waiting to see if we get invited back to discuss USI services and capabilities."

55.    ABC Home Furnishings appeared in the attachment named "Email addresses.xls," which document listed the contact's first and last names, e-mail address, company name, parent name, and level of access.  There were four entries for ABC Home Furnishing Co. on this document.  There was also one entry for Radian Corp. in the same document.

56.    In the attachment named "email address.doc," two e-mail addresses for contacts at Radian appear, and five e-mail addresses for contacts at ABC Carpet & Home appear.

57.    In the attachment named "Bill's list.xls," three e-mail addresses for contacts at ABC Carpet & Home appear.

58.    In the attachment named "private Co from 100 to 5000 ee's in NYC LI.htm," ABC Home Furnishings, Inc. appears, along with the headquarters address, main phone number, and main fax number.

59.    In the attachment named "Hoovers Prospects 251 to 1000 NY NJ CT.htm," ABC Home Furnishings, Inc. appears three times, along with each contact's name and title, the company address, phone number, fax number, web address, number of employees, and type of company.

60.    USI protects its Confidential Information and proprietary information through the use of written confidentiality agreements; written confidentiality policies; training sessions;

13

limiting access to computer systems, networks and facilities; password-protecting computers; and internally limiting the dissemination of information.

## USI's Communications with Hueber about his Post-Employment Obligations

61.    On August 13, 2007, USI, through its counsel Holland & Knight LLP, wrote to Hueber to remind him of his common law and contractual obligations to USI.  The letter also asked Hueber to reassure USI that he would honor his commitment not to divulge Confidential Information or to solicit USI customers, and to refrain from making defamatory statements injurious to USI in an apparent attempt to bring business to Genatt.

62.    USI did not receive a response from Hueber to the August 13, 2007 letter.

63.    On September 13, 2007, USI, through its counsel Holland & Knight LLP, wrote to Hueber to relate the impact of his e-mail and mass deletion activities on USI.  The letter explained the affect Hueber's activities had on USI related to the Computer Fraud & Abuse Act, and with respect to the Court Order for the preservation of business-related documents issued in relation to pending investigation and litigation, mentioned above.  It also sought to remedy Hueber's wrongdoings without resort to litigation by examining Hueber's personal computers, removing and returning any USI information, and making USI whole for the expenses incurred as a result of his activities.

64.    On October 25, 2007, Hueber wrote a letter in response to USI's communications, indicating that he was aware of his obligations and acknowledging he signed the NSDA with USI on October 8, 2002.  Hueber also asked for more detail concerning the e-mailing and deletion of USI files or documents.  Then, Hueber brought up some issues regarding business expense reimbursement, rolling over his 401(k), receipt of commissions, and use of his name on reports after his departure from USI.

14

65.     On November 16, 2007, USI, through its counsel Holland & Knight LLP, wrote to Hueber to respond to his letter. USI's response indicated how each of the issues brought up by Hueber were either not actually issues or had already been resolved. USI then requested again that Hueber submit his personal computer for forensic analysis, removing and returning any USI information, and making USI whole for the expenses incurred as a result of his activities. Without resolution of the outstanding issues, USI informed Hueber that it would seek redress in federal court.

66.     USI did not receive a response from Hueber to the November 16, 2007 letter.

67.     On January 8, 2008, USI, through its counsel Holland & Knight LLP, wrote to Hueber to indicate that it had received no response to its last letter. USI requested Hueber's intentions as to submitting his computer for forensic analysis, removing and returning any USI information, and the repayment of USI's computer forensic expenses. USI indicated its intention to proceed with litigation if no response was received on or before January 15, 2008.

**Hueber Breached the Non-Solicitation and Non-Disclosure Agreement**

68.     Hueber resigned from his position at USI in order to join Kinloch or one of its affiliates, Genatt or Consulting.

69.     He is currently serving as a Vice President at Consulting in Melville, New York.

70.     In or about July 30, 2007, USI learned that Hueber had called USI client Radian Corp. the week prior to solicit the sale of services.

71.     While at USI, Hueber had provided services to Radian, a USI Client Account, as the Producer and a client team member.

72.    In or about January 2008, USI learned that USI client ABC Home Furnishings had been solicited, directly or indirectly, by Hueber and that it was taking its business from USI to Consulting.

73.    While at USI, Hueber had provided services to ABC Home Furnishings, a USI Client Account, as the Producer and a client team member.

74.    USI was broker of record for the following policies for ABC Home Furnishings: Oxford (medical), Aetna (dental), and Unum (life & accidental death and dismemberment, voluntary life, voluntary long term disability, and voluntary short term disability).

75.    Effective February 1, 2008, Consulting became the new broker of record for ABC Home Furnishings for the following policy: Oxford (medical), thereby replacing USI with respect to the same policy for which USI had been broker of record.

76.    Effective February 1, 2008, upon information and belief Consulting became the new broker of record for ABC Home Furnishings for the following policies: Aetna (dental), and Unum (life & accidental death and dismemberment, voluntary life, voluntary short term disability), thereby replacing USI with respect to the same policies for which USI had been broker of record.

77.    The loss of the ABC Home Furnishings account was due to Hueber's solicitation of this USI Client Account. But for Hueber's solicitation, the account would have remained with USI.

78.    In or about February 2008, USI learned that USI client ABC Carpet & Home had been solicited, directly or indirectly, by Hueber and that it was taking its business from USI to Consulting.

79.    While at USI, Hueber had provided services to ABC Carpet & Home, a USI Client Account, as the Producer and a client team member.

80.    USI was broker of record for the following policies for ABC Carpet & Home: Lincoln Financial Group (life & accidental death and dismemberment), The Hartford (voluntary life), and Unum (voluntary long term disability and voluntary short term disability).

81.    Effective February 1, 2008, upon information and belief Consulting became the new broker of record for ABC Carpet & Home for the following policies: Lincoln Financial Group (life & accidental death and dismemberment), The Hartford (voluntary life), and Unum (voluntary long term disability and voluntary short term disability), thereby replacing USI with respect to the same policy for which USI had been broker of record.

82.    The loss of the ABC Carpet & Home account was due to Hueber's solicitation of this USI Client Account. But for Hueber's solicitation, the account would have remained with USI.

83.    Hueber's use of USI Confidential Information is a violation of his NSDA.

84.    Hueber's solicitation of USI Companies' Client Accounts is a violation of his NSDA.

85.    Hueber's deliberate taking and use of Plaintiffs' Confidential Information, including policy expiration dates, for example, provides Hueber and his new employer, Kinloch or any of its affiliates, with an unfair competitive advantage.

86.    Defendants' continued solicitation and providing of services to or selling to USI Companies' clients will cause Plaintiffs to permanently lose an unknown number of Client Accounts, and to suffer incalculable damages both with respect to the Client Accounts lost and with respect to the new business that such accounts assist in generating.

17

87.    Hueber's taking and use of USI's Confidential Information, and Defendants' solicitation of Client Accounts is causing irreparable harm to Plaintiffs.

### FIRST CAUSE OF ACTION – VIOLATION OF COMPUTER FRAUD AND ABUSE ACT 18 U.S.C. §1030(a)(2)(C) (Defendant Hueber)

88.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth at length herein.

89.    Defendant Hueber intentionally accessed a protected USI computer without or exceeding his authorization.

90.    Defendant Hueber did obtain information, including USI Confidential Information and proprietary information, from a protected USI computer.

91.    Such conduct involved interstate communication due to the use of the Internet.

92.    Plaintiffs have suffered damage or loss as a result of Defendant's violation of the CFAA, which has caused loss to one or more persons during a one year period, aggregating at least $5,000 in value.

93.    As a direct and foreseeable result of Defendant's conduct, Plaintiffs have been injured and have suffered damages in an amount to be determined at trial, but in all events not less than $20,000.

94.    Further, USI seeks an order from this Court that if USI is compelled to restore the data due to other pending investigation or litigation, Defendant will reimburse the full cost of such restoration to meet such requirements.

## SECOND CAUSE OF ACTION – VIOLATION OF COMPUTER FRAUD AND ABUSE ACT 18 U.S.C. §1030(a)(4)
### (Defendant Hueber)

95.   Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth at length herein.

96.   For the benefit of Kinloch and/or one of its affiliates, Hueber acted as an agent, knowingly and with intent to defraud, and did access a protected USI computer without authorization or exceeding authorized access, and by means of such conduct furthered the intended fraud.

97.   Defendants did obtain a thing of value, including the Plaintiffs' Confidential Information and proprietary information, the value of such use which exceeds the sum of $5,000 in any one year period.

98.   Plaintiffs have suffered damage or loss as a result of Defendants' violation of the CFAA, which has caused a loss to one or more persons during a one year period, aggregating at least $5,000 in value.

99.   As a direct and foreseeable result of Defendants' conduct, Plaintiffs have been injured and have suffered damages in an amount to be determined at trial, but in all events not less than $20,000.

100.   Further, USI seeks an order from this Court that if USI is compelled to restore the data due to other pending investigation or litigation, Defendant will reimburse the full cost of such restoration to meet such requirements.

## THIRD CAUSE OF ACTION – VIOLATION OF COMPUTER FRAUD
## AND ABUSE ACT 18 U.S.C. §1030(a)(5)
### (Defendant Hueber)

101.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth at length herein.

102.    Hueber knowingly caused the transmission of a program, information, code or command, which included the command to delete certain documents and the transmission of Plaintiffs' Confidential Information and proprietary information, and the result of such conduct intentionally caused damage without authorization to a protected USI computer.

103.    Hueber intentionally accessed a protected USI computer without authorization, and as a result of such conduct, recklessly caused damage, including disclosure of Plaintiffs' Confidential Information and proprietary information, and impairing the integrity or availability of data, a program, a system or information.

104.    Hueber intentionally accessed a protected USI computer without authorization, and as a result of such conduct, caused damage, including disclosure of Plaintiffs' Confidential Information and proprietary information, and impairing the integrity or availability of data, a program, a system or information.

105.    Plaintiffs have suffered damage or loss as a result of Defendant Hueber's violation of the CFAA, which has caused loss to one or more persons during a one year period, aggregating at least $5,000 in value.

106.    As a direct and foreseeable result of Defendant Hueber's conduct, Plaintiffs have been injured and have suffered damages in an amount to be determined at trial, but in all events not less than $20,000.

107. Further, USI seeks an order from this Court that if USI is compelled to restore the data due to other pending investigation or litigation, Defendant will reimburse the full cost of such restoration to meet such requirements.

### FOURTH CAUSE OF ACTION – BREACH OF CONTRACT
### NON-SOLICITATION AND NON-DISCLOSURE AGREEMENT
### (Defendant Hueber)

108. Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth at length herein.

109. Plaintiffs and Hueber are both parties to and are bound by the NSDA.

110. Plaintiffs have performed their duties under the Agreement.

111. The allegations contained herein demonstrate that Hueber has breached the non-disclosure of Confidential Information provision contained in Section 3 of his NSDA.

112. The allegations contained herein demonstrate that Hueber has breached the non-solicitation provision contained in Section 2 of his NSDA.

113. The allegations contained herein demonstrate that Hueber has breached the conflict of interest and protection of goodwill provision contained in Section 2(c) of his NSDA.

114. Plaintiffs have suffered damages, irreparable injury and harm to their business, including but not limited to, the loss of customers and business, due to Hueber's breaches of the NSDA.

115. As a result of Hueber's breaches of contract, Plaintiffs are entitled to damages in an amount to be proven at trial, but in no event less than $140,000, plus interest.

### FIFTH CAUSE OF ACTION - BREACH OF DUTY OF LOYALTY
#### (Defendant Hueber)

116.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth at length herein.

117.    Hueber, as a Vice President and Producer at Services, owed USI a duty of loyalty.

118.    The allegations contained herein demonstrate that Hueber accessed and transmitted commands and information for his own benefit and for the benefit of his new employer, Kinloch and/or one of its affiliates, but against the interest of USI, while he was still employed by USI.

119.    The allegations above demonstrate that Hueber acted to misappropriate and/or utilize USI's Confidential Information for his own benefit and the benefit of his new employer, and in violation of his NSDA, both before and after his employment with the USI Companies terminated, for the purpose of soliciting USI Client Accounts.

120.    Plaintiffs have suffered damages, including but not limited to, the loss of customers and business, misappropriation and utilization of Confidential Information, the diversion of business and income, due to Hueber's breach of duty of loyalty.

121.    As a result of Hueber's breach of duty of loyalty, Plaintiffs are entitled to damages in an amount to be proven at trial, but in no event less than $140,000.

22

## SIXTH CAUSE OF ACTION – UNFAIR COMPETITION
### (Defendants Hueber, Kinloch, Genatt and Consulting)

122.    Plaintiffs repeat and ré-allege each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth at length herein.

123.    Through the acts described above, Defendants have willfully and knowingly engaged in unfair acts or practices and unfair methods of competition, including the bad faith misappropriation of Plaintiffs' proprietary Confidential Information and good will.

124.    These continuing practices are anti-competitive, commercially immoral, unethical, and oppressive, and have caused and threaten to cause substantial additional injury to Plaintiffs.  As a result of such violations, Defendants have gained and will continue to gain unjust profits and undeserved good will.

125.    Plaintiffs have suffered irreparable harm as a result of Defendants' actions and will continue to suffer irreparable harm.

126.    As a direct and foreseeable result of Defendants' conduct, Plaintiffs have been injured and suffered damages in an amount to be determined at trial, but in all events not less than $140,000.

127.    Plaintiffs will continue to be harmed unless Defendants are enjoined from using Plaintiffs' Confidential Information.

## SEVENTH CAUSE OF ACTION – TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (Defendants Kinloch, Genatt and Consulting)

128.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth at length herein.

129.    With knowledge of the Plaintiffs' Confidential Information, including, for example, Client Account contact, policies and related information, obtained due to wrongful means, Defendants have tortiously interfered with Plaintiffs' prospective economic advantage.

130.    Upon information and belief, Defendants have used Plaintiffs' Confidential Information to interfere with Client Account relationships and to deprive USI of business opportunities that would have been available to them, including business opportunities with USI customers such as ABC Home Furnishings and ABC Carpet & Home, for example.

131.    These acts were committed with the intent to injure Plaintiffs' future business expectancies with USI customers, including, for example, ABC Home Furnishings and ABC Carpet & Home, and have succeeded in doing so.

132.    As a direct and foreseeable result of Defendants' conduct, Plaintiffs have been injured and suffered damages, including punitive damages, in an amount to be determined at trial, but in all events not less than $140,000.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request the Court grant the following relief:

A.  Compensatory damages from Hueber, Genatt, Consulting, and/or Kinloch, to the extent ascertainable, based upon the profit Genatt, Consulting and/or Kinloch make on business unfairly diverted or taken from USI as a result of Hueber's breach of the NSDA, in an amount to be determined at trial, but no less than $140,000;

B.  Compensatory damages as a result of Hueber's breach of his common law duty of loyalty to USI, in an amount to be determined at trial, but no less than $140,000;

C.  Compensatory damages and equitable relief against Hueber for his violation of the Computer Fraud and Abuse Act, in an amount to be determined at trial, but no less than $20,000;

D.  A Court Order providing that if USI is compelled to restore the data due to other pending investigation or litigation, Defendant will reimburse the full cost of such restoration to meet such requirements.

E.  Punitive and exemplary damages against Hueber and Kinloch and/or any of its affiliates as a result of their outrageous and egregious conduct in a sum to be determined at trial;

F.  Permanent injunction barring Hueber and Kinloch and/or any of its affiliates from using the USI Companies' Confidential Information;

G.  A post-trial two year injunction barring Hueber from soliciting, directly or indirectly, the USI Client Accounts in existence within two years of Hueber's separation from employment with the USI Companies;

H.  Attorneys' fees, costs and disbursements;

I.  Pre- and post-judgment interest;

25

J. Such further and separate other relief as the Court deems just and equitable.

Dated: New York, New York
       March 11, 2008

Respectfully submitted,

HOLLAND & KNIGHT LLP
Attorneys for Plaintiffs

By: _____
    Frederick D. Braid
    Loren L. Forrest, Jr.
    Colleen A. Sorrell
    195 Broadway
    New York, NY 10007
    212-513-3200 (phone)
    212-385-9010 (fax)
    fred.braid@hklaw.com
    loren.forrest@hklaw.com
    colleen.sorrell@hklaw.com

# 5086967_v5

26

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
PROGRESSIVE PLAN ADMINISTRATORS, INC., and
USI INSURANCE SERVICES LLC,                         Docket No. 08-CV-2488 (AKH)(KNF)

                          Plaintiffs,

                                                    **VERIFIED ANSWER**

            v.

WILLIAM J. HUEBER, KINLOCH HOLDINGS, INC.,          ECF Case
GENATT ASSOCIATES, INC., and KINLOCH
CONSULTING GROUP, INC.,

                          Defendants.
----------------------------------------------------------------x

### ANSWER

Defendant William J. Hueber, by his attorneys Fensterstock & Partners LLP, as and for his

Answer to Plaintiffs' Complaint, responds as follows:

### NATURE OF THE ACTION

1.      Denies the truth of each and every allegation contained in paragraph "1" of the

Complaint.

### PARTIES

2.      Denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in paragraph "2" of the Complaint.

3.      Denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in paragraph "3" of the Complaint.

4.      Denies the truth of each and every allegation contained in paragraph "4" of the

Complaint, except admits that Hueber is a resident of West Islip, is a former employee of USI

Insurance Services LLP, and is now an employee of Kinloch Consulting Group.

5.      Admits the allegations contained in paragraph "5" of the Complaint.

6.    Admits the allegations contained in paragraph "6" of the Complaint.

7.    Admits the allegations contained in paragraph "7" of the Complaint.

## JURISDICTION AND VENUE

8.    Denies the truth of each and every allegation contained in paragraph "8" of the Complaint and respectfully refers all questions of law to the Court.

9.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "9" of the Complaint and respectfully refers all questions of law to the Court.

10.    Denies the truth of each and every allegation contained in paragraph "10" of the Complaint and respectfully refers all questions of law to the Court.

## FACTUAL BACKGROUND

**The Business of USI Companies**

11.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "11" of the Complaint.

12.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "12" of the Complaint.

**The Role of Producers**

13.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "13" of the Complaint.

14.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "14" of the Complaint.

15.    Denies the truth of each and every allegation contained in paragraph "15" of the

2

Complaint and respectfully refers all questions of law to the Court.

**Hueber Employment with USI**

16.     Admits the allegations contained in paragraph "16" of the Complaint.

17.     Denies the truth of each and every allegation contained in paragraph "17" of the Complaint.

18.     Denies the truth of each and every allegation contained in paragraph "18" of the Complaint and allows the contents of the document to speak for itself.

19.     Denies the truth of each and every allegation contained in paragraph "19" of the Complaint and allows the contents of the document to speak for itself and respectfully refers all questions of law to the Court.

20.     Denies the truth of each and every allegation contained in paragraph "20" of the Complaint and allows the contents of the document to speak for itself and respectfully refers all questions of law to the Court.

21.     Denies the truth of each and every allegation contained in paragraph "21" of the Complaint and allows the contents of the document to speak for itself.

22.     Denies the truth of each and every allegation contained in paragraph "22" of the Complaint and allows the contents of the document to speak for itself and respectfully refers all questions of law to the Court.

23.     Denies the truth of each and every allegation contained in paragraph "23" of the Complaint and allows the contents of the document to speak for itself and respectfully refers all questions of law to the Court.

24.     Denies the truth of each and every allegation contained in paragraph "24" of the

Complaint and allows the contents of the document to speak for itself and respectfully refers all questions of law to the Court.

25.    Denies the truth of each and every allegation contained in paragraph "25" of the Complaint and respectfully refers all questions of law to the Court.

26.    Denies the truth of each and every allegation contained in paragraph "26" of the Complaint, except admits that Hueber was an at-will employee and respectfully refers all questions of law to the Court.

27.    Denies the truth of each and every allegation contained in paragraph "27" of the Complaint and allows the contents of the document to speak for itself.

28.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "28" of the Complaint, and respectfully refers all questions of law to the Court.

29.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "29" of the Complaint, and respectfully refers all questions of law to the Court.

30.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "30" of the Complaint, and respectfully refers all questions of law to the Court.

31.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "31" of the Complaint, and respectfully refers all questions of law to the Court.

32.    Denies knowledge or information sufficient to form a belief as to the truth of the

4

allegations contained in paragraph "32" of the Complaint.

33.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "33" of the Complaint.

34.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "34" of the Complaint.

35.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "35" of the Complaint.

36.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "36" of the Complaint.

37.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "37" of the Complaint.

38.    Denies the truth of each and every allegation contained in paragraph "38" of the Complaint and respectfully refers all questions of law to the Court.

39.    Denies the truth of each and every allegation contained in paragraph "39" of the Complaint.

**Hueber Termination of Employment with USI**

40.    Denies the truth of each and every allegation contained in paragraph "40" of the Complaint, except admits that on July 5, 2007, Hueber submitted a letter of voluntary resignation.

41.    Admits the allegations contained in paragraph "41" of the Complaint.

42.    Admits the allegations contained in paragraph "42" of the Complaint.

43.    Denies the truth of each and every allegation contained in paragraph "43" of the Complaint.

44.    Denies the truth of each and every allegation contained in paragraph "44" of the Complaint.

**Hueber Illegal Activities at USI Prior to Termination of Employment**

45.    Denies the truth of each and every allegation contained in paragraph "45" of the Complaint.

46.    Denies the truth of each and every allegation contained in paragraph "46" of the Complaint.

47.    Denies the truth of each and every allegation contained in paragraph "47" of the Complaint.

48.    Denies the truth of each and every allegation contained in paragraph "48" of the Complaint.

### USI Engages Vendor for Technical Assistance and Analysis

49.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "49" of the Complaint.

50.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "50" of the Complaint.

51.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "51" of the Complaint.

52.    Denies the truth of each and every allegation contained in paragraph "52" of the Complaint.

53.    Denies the truth of each and every allegation contained in paragraph "53" of the Complaint.

6

54.    Denies the truth of each and every allegation contained in paragraph "54" of the Complaint.

55.    Denies the truth of each and every allegation contained in paragraph "55" of the Complaint.

56.    Denies the truth of each and every allegation contained in paragraph "56" of the Complaint.

57.    Denies the truth of each and every allegation contained in paragraph "57" of the Complaint.

58.    Denies the truth of each and every allegation contained in paragraph "58" of the Complaint.

59.    Denies the truth of each and every allegation contained in paragraph "59" of the Complaint.

60.    Denies the truth of each and every allegation contained in paragraph "60" of the Complaint.

**USI's Communications with Hueber about his Post-Employment Obligations**

61.    Denies the truth of each and every allegation contained in paragraph "61" of the Complaint, except admits that Holland & Knight LLP sent a letter to Hueber dated August 13, 2007.

62.    Admits the allegations contained in paragraph "62" of the Complaint.

63.    Denies the truth of each and every allegation contained in paragraph "63" of the Complaint, except admits that Holland & Knight LLP sent a letter to Hueber dated September 13, 2007.

64.    Denies the truth of each and every allegation contained in paragraph "64" of the

Complaint, except admits that Hueber sent a letter dated October 25, 2007.

65.    Denies the truth of each and every allegation contained in paragraph "65" of the Complaint, except admits that Holland & Knight LLP wrote a letter to Hueber dated November 16, 2007.

66.    Admits the allegations contained in paragraph "66" of the Complaint.

67.    Denies the truth of each and every allegation contained in paragraph "76" of the Complaint, except admits Holland & Knight LLP sent a letter to Hueber dated January 8, 2008.

**Hueber Breached the Non-Solicitation and Non-Disclosure Agreement**

68.    Denies the truth of each and every allegation contained in paragraph "68" of the Complaint, except admits that Hueber resigned from his position at USI.

69.    Admits the allegations contained in paragraph "69" of the Complaint.

70.    Denies the truth of each and every allegation contained in paragraph "70" of the Complaint.

71.    Denies the truth of each and every allegation contained in paragraph "71" of the Complaint, except admits that Hueber provided services to Radian.

72.    Denies the truth of each and every allegation contained in paragraph "72" of the Complaint.

73.    Denies the truth of each and every allegation contained in paragraph "71" of the Complaint, except admits that Hueber provided services to ABC Home Furnishings.

74.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "74" of the Complaint.

75.    Denies knowledge or information sufficient to form a belief as to the truth of the

8

allegations contained in paragraph "75" of the Complaint.

76.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "76" of the Complaint.

77.    Denies the truth of each and every allegation contained in paragraph "77" of the Complaint.

78.    Denies the truth of each and every allegation contained in paragraph "78" of the Complaint.

79.    Denies the truth of each and every allegation contained in paragraph "79" of the Complaint, except admits that Hueber provided services to ABC Carpet & Home.

80.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "80" of the Complaint.

81.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "81" of the Complaint.

82.    Denies the truth of each and every allegation contained in paragraph "82" of the Complaint.

83.    Denies the truth of each and every allegation contained in paragraph "83" of the Complaint.

84.    Denies the truth of each and every allegation contained in paragraph "84" of the Complaint.

85.    Denies the truth of each and every allegation contained in paragraph "85" of the Complaint.

86.    Denies the truth of each and every allegation contained in paragraph "86" of the

Complaint.

87.    Denies the truth of each and every allegation contained in paragraph "87" of the

Complaint.

## FIRST CAUSE OF ACTION - VIOLATION OF COMPUTER FRAUD
## AND ABUSE ACT 18 U.S.C. § 1030 (A)(2)©
### (Defendant Hueber)

88.    Defendant repeats and reiterates each and every response to paragraphs "1" through

"87" of the Complaint, as if each were set forth at length herein.

89.    Denies the truth of each and every allegation contained in paragraph "89" of the

Complaint.

90.    Denies the truth of each and every allegation contained in paragraph "90" of the

Complaint.

91.    Denies the truth of each and every allegation contained in paragraph "91" of the

Complaint.

92.    Denies the truth of each and every allegation contained in paragraph "92" of the

Complaint.

93.    Denies the truth of each and every allegation contained in paragraph "93" of the

Complaint.

94.    Denies the truth of each and every allegation contained in paragraph "94" of the

Complaint.

## SECOND CAUSE OF ACTION - VIOLATION OF COMPUTER FRAUD
## AND ABUSE ACT 18 U.S.C. § 1030 (a)(4)
### (Defendant Hueber)

95.    Defendant repeats and reiterates each and every response to paragraphs "1" through

"94" of the Complaint, as if each were set forth at length herein.

96.    Denies the truth of each and every allegation contained in paragraph "96" of the Complaint.

97.    Denies the truth of each and every allegation contained in paragraph "97" of the Complaint.

98.    Denies the truth of each and every allegation contained in paragraph "98" of the Complaint.

99.    Denies the truth of each and every allegation contained in paragraph "99" of the Complaint.

100.    Denies the truth of each and every allegation contained in paragraph "100" of the Complaint.

### THIRD CAUSE OF ACTION – VIOLATION OF COMPUTER FRAUD AND ABUSE ACT 18 U.S.C. § 1030 (a)(5) (Defendant Hueber)

101.    Defendant repeats and reiterates each and every response to paragraphs "1" through "100" of the Complaint, as if each were set forth at length herein.

102.    Denies the truth of each and every allegation contained in paragraph "102" of the Complaint.

103.    Denies the truth of each and every allegation contained in paragraph "103" of the Complaint.

104.    Denies the truth of each and every allegation contained in paragraph "104" of the Complaint.

105.    Denies the truth of each and every allegation contained in paragraph "105" of the

11

Complaint.

106.    Denies the truth of each and every allegation contained in paragraph "106" of the

Complaint.

107.    Denies the truth of each and every allegation contained in paragraph "107" of the

Complaint.

## FOURTH CAUSE OF ACTION – BREACH OF CONTRACT
## NON-SOLICITATION AND NON-DISCLOSURE AGREEMENT
### (Defendant Hueber)

108.    Defendant repeats and reiterates each and every response to paragraphs "1" through

"107" of the Complaint, as if each were set forth at length herein.

109.    Denies the truth of each and every allegation contained in paragraph "109" of the

Complaint.

110.    Denies the truth of each and every allegation contained in paragraph "110" of the

Complaint.

111.    Denies the truth of each and every allegation contained in paragraph "111" of the

Complaint.

112.    Denies the truth of each and every allegation contained in paragraph "112" of the

Complaint.

113.    Denies the truth of each and every allegation contained in paragraph "113" of the

Complaint.

114.    Denies the truth of each and every allegation contained in paragraph "114" of the

Complaint.

115.    Denies the truth of each and every allegation contained in paragraph "115" of the

Complaint.

## FIFTH CAUSE OF ACTION – BREACH OF DUTY LOYALTY
### (Defendants Hueber)

116.    Defendant repeats and reiterates each and every response to paragraphs "1" through "115" of the Complaint, as if each were set forth at length herein.

117.    Denies the truth of each and every allegation contained in paragraph "117" of the Complaint.

118.    Denies the truth of each and every allegation contained in paragraph "118" of the Complaint.

119.    Denies the truth of each and every allegation contained in paragraph "119" of the Complaint.

120.    Denies the truth of each and every allegation contained in paragraph "120" of the Complaint.

121.    Denies the truth of each and every allegation contained in paragraph "121" of the Complaint.

## SIXTH CAUSE OF ACTION – UNFAIR COMPETITION
### (Defendants Hueber, Kinloch, Genatt and Consulting)

122.    Defendant repeats and reiterates each and every response to paragraphs "1" through "121" of the Complaint, as if each were set forth at length herein.

123.    Denies the truth of each and every allegation contained in paragraph "123" of the Complaint.

124.    Denies the truth of each and every allegation contained in paragraph "124" of the Complaint.

13

125.    Denies the truth of each and every allegation contained in paragraph "125" of the Complaint.

126.    Denies the truth of each and every allegation contained in paragraph "126" of the Complaint.

127.    Denies the truth of each and every allegation contained in paragraph "127" of the Complaint.

## SEVENTH CAUSE OF ACTION - TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (Defendants Kinloch, Genatt and Consulting)

128.    Defendant repeats and reiterates each and every response to paragraphs "1" through "127" of the Complaint, as if each were set forth at length verbatim herein.

129.    Denies the truth of each and every allegation contained in paragraph "129" of the Complaint.

130.    Denies the truth of each and every allegation contained in paragraph "130" of the Complaint.

131.    Denies the truth of each and every allegation contained in paragraph "131" of the Complaint.

132.    Denies the truth of each and every allegation contained in paragraph "132" of the Complaint.

## AFFIRMATIVE DEFENSES

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

133.    The Complaint fails to state a cause of action upon which relief may be granted.

14

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

134.    Any damages sustained by Plaintiffs were a result of the acts or omissions of third persons or entities over which the answering defendant exercised no control.

## AS AND FOR THIRD AFFIRMATIVE DEFENSE

135.    By virtue of their own respective acts, Plaintiffs are estopped from recovering for their alleged damages.

## AS AND FOR FOURTH AFFIRMATIVE DEFENSE

136.    Plaintiffs' complaint must be dismissed pursuant to the doctrines of waiver and ratification.

## AS AND FOR FIFTH AFFIRMATIVE DEFENSE

137.    Plaintiffs have failed to join all necessary parties to this action.

## AS AND FOR SIXTH AFFIRMATIVE DEFENSE

138.    Plaintiffs' claims are barred by the doctrine of laches.

## AS AND FOR SEVENTH AFFIRMATIVE DEFENSE

139.    Plaintiffs' claims are barred by the doctrine of unclean hands.

## AS AND FOR EIGHTH AFFIRMATIVE DEFENSE

140.    Plaintiffs have failed to mitigate any damages they may have sustained as a result of the matters alleged in the Complaint.

## AS AND FOR NINTH AFFIRMATIVE DEFENSE

141.    Plaintiffs' action may be adequately remedied by monetary damages and, therefore, equitable relief is inappropriate.

15

## AS AND FOR TENTH AFFIRMATIVE DEFENSE

142.    Plaintiffs' claims have not been stated with particularity and must be dismissed.

## AS AND FOR ELEVENTH AFFIRMATIVE DEFENSE

143.    Plaintiffs' action is based purely upon speculation and conjecture and was brought in bad faith.

## AS AND FOR TWELFTH AFFIRMATIVE DEFENSE

144.    The restrictive covenants contained within Sections 2 and 3 of the Non-Solicitation and Non-Disclosure Agreement ("NSDA") are unenforceable.

## AS AND FOR THIRTEENTH AFFIRMATIVE DEFENSE

145.    The restrictive covenants within the USI Employee Handbook, including policies on Confidential Information and Electronic Information Systems ("EIS"), including Appendix I, are unenforceable.

## AS AND FOR FOURTEENTH AFFIRMATIVE DEFENSE

146.    The restrictive covenants and policies within the USI Code of Business Conduct are unenforceable.

## AS AND FOR FIFTEENTH AFFIRMATIVE DEFENSE

146.    The definition of "Confidential Information" as contained with the NSDA, Employee Handbook, EIS Policy, and USI Code of Business Conduct is overly broad, vague and unenforceable and therefore, does not serve as a proper foundation for Plaintiffs' action.

## AS AND FOR SIXTEENTH AFFIRMATIVE DEFENSE

147.    Defendant has not taken, used or disclosed Plaintiffs' confidential information or trade secrets, or improperly solicited Plaintiffs' clients.

16

**WHEREFORE**, answering Defendant William J. Hueber demands judgment dismissing the Complaint on all causes of action, together with attorneys fees and the costs and disbursements of this action.

Dated: New York, New York
      April 14, 2008

FENSTERSTOCK & PARTNERS LLP

By: _____
      Blair C. Fensterstock
      Jeanne M. Valentine

      30 Wall Street, 9th Floor
      New York, New York 10005
      Telephone: (212) 785-4100

      *Attorneys for Defendant William J. Hueber*

## VERIFICATION

STATE OF NEW YORK    )
                              )    ss.:
COUNTY OF SUFFOLK    )

        WILLIAM J. HUEBER, being duly sworn, deposes and says:

        I am the defendant in this action. I have read the foregoing Answer to Plaintiffs'

Complaint and know the contents thereof. The Answer is true to my knowledge except as to those

matters alleged upon information and belief and as to those matters I believe them to be true.

                                        _____
                                           WILLIAM J. HUEBER

Sworn to before me this
_15th_ day of April, 2008

_____
Notary Public

**Dora Lorenzo**
**Notary Public, State of New York**
**No. 4781068**
**Qualified in Suffolk County**
**Term Expires April 30 _2011_**

18