Frederick D. Braid
Howard Sokol
Colleen A. Sorrell
HOLLAND & KNIGHT LLP
195 Broadway, 24th Floor
New York, New York 10007
(212) 513-3200 (telephone)
(212) 385-9010 (facsimile)

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                    :

PROGRESSIVE PLAN ADMINISTRATORS,
INC., and USI INSURANCE SERVICES LLC,     :     Case No.: 08-CV-2488 (AHK)(KNF)
                                    :

                    Plaintiffs,      :

              v.                   :

WILLIAM J. HUEBER, KINLOCH HOLDINGS,   :
INC., GENATT ASSOCIATES, INC., and
KINLOCH CONSULTING GROUP, INC.,      :

                  Defendants.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
## THE MOTION TO DISMISS OF DEFENDANTS KINLOCH HOLDINGS, INC.,
## GENATT ASSOCIATES, INC. AND KINLOCH CONSULTING GROUP, INC.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................... 1

SUMMARY OF ARGUMENT ......................................................................................... 1

STATEMENT OF KEY FACTS AND ALLEGATIONS ................................................. 3

ARGUMENT

I

THE APPLICABLE LEGAL STANDARDS DEMAND A
FINDING THAT PLAINTIFFS HAVE SUFFICIENTLY PLED
THEIR CLAIMS AGAINST THE CORPORATE DEFENDANTS ......................................... 6

    A.   Plaintiff's Pleading Burden Under Rule 8(a)(2) ............................................. 6

    B.   The Court's Role in Deciding a Motion Under Rule 12(b)(6) ........................ 8

II

PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A CLAIM
FOR UC AGAINST THE CORPORATE DEFENDANTS ....................................................... 10

III

PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A CLAIM
FOR TIPEA AGAINST THE CORPORATE DEFENDANTS ................................................. 15

CONCLUSION .......................................................................................................... 21

# TABLE OF AUTHORITIES

Pages(s)

## FEDERAL CASES

*In re* Adelphia Communications Corp.,
  365 B.R. 24 (S.D.N.Y. 2007)...................................................................................6

Am. Bldg. Maint. Co. of NY v. Acme Prop. Servs. Inc.,
  515 F. Supp. 2d 298 (N.D.N.Y. 2007)...................................................................13

Astroworks v. Astroexhibit, Inc.,
  257 F. Supp. 2d 609 (S.D.N.Y. 2003).......................................................8, 11, 13

Carruthers v. Flaum,
  365 F. Supp. 2d 448 (S.D.N.Y. 2005)...................................................................10

Chambers v. Time Warner, Inc.,
  282 F.3d 147 (2d Cir. 2002).....................................................................................8

Cleveland v. Caplaw Enters.,
  448 F.3d 518 (2d Cir. 2006).....................................................................................9

Commercial Data Servers, Inc. v. IBM Corp,
  166 F. Supp. 2d 891 (S.D.N.Y. 2001) ...................................................................14

Conmed Corp. v. ERBE Electromedizin GmbH,
  129 F. Supp. 2d 461 (N.D.N.Y. 2001)...................................................................11

Cooper v. Pate,
  378 U.S. 546 (1964).................................................................................................9

Egelston v. State Univ. College,
  535 F.2d 752 (2d Cir. 1976).....................................................................................9

Erickson v. Pardus,
  127 S.Ct. 2197 (2007)...............................................................................................6

Excellus Health Plan, Inv. v. Tran,
  287 F. Supp. 2d 167 (W.D.N.Y. 2003) ..................................................................14

Felix-Torres v. Graham,
  521 F. Supp. 2d 157 (N.D.N.Y. 2007)....................................................................9

Festa v. Local 3 Int'l Bhd. of Elec. Workers,
    905 F.2d 35 (2d Cir. 1990)...........................................................................8

Hubbell Inc. v. Pass & Seymour, Inc.,
    833 F. Supp. 955 (S.D.N.Y. 1995) ...........................................................15

In re Indep. Energy Holdings PLC,
    154 F. Supp. 2d 741 (S.D.N.Y. 2001).........................................................9

Jackson Nat'l Life Ins. Co. v. Merrill, Lynch & Co.,
    32 F.3d 697 (2d Cir. 1994).........................................................................8

Lugo v. Senkowski,
    114 F. Supp. 2d 111 (N.D.N.Y. 2000) ........................................................9

Mull v. Colt,
    31 F.R.D. 154 (S.D.N.Y. 1962) ................................................................10

777388 Ontario Ltd. v. Lencore Acoustics Corp.,
    105 F. Supp. 2d 56 (E.D.N.Y. 2000) ........................................................14

PKG Group, LLC v. Gamma Croma, S.p.A.,
    446 F. Supp. 2d 249 (S.D.N.Y. 2006).......................................................16

Petruso v. Schlaefer,
    474 F. Supp. 2d 430 (E.D.N.Y. 2007) ........................................................9

Ryder Energy Dist. Corp. v. Merrill Lynch Commodities, Inc.,
    748 F.2d 774 (2d Cir. 1984).......................................................................8

Scheuer v. Rhodes,
    416 U.S. 232 (1974)...................................................................................8

Swierkiewicz v. Sorema,
    534 U.S. 506 (2002)...................................................................................7

Twombly v. Bell Atl. Corp.,
    127 S.Ct. 1955 (2007)................................................................................6

Villager Pond, Inc. v. Town of Darien,
    56 F.3d 375 (2d Cir. 1995).........................................................................8

Volvo N. Am. Corp v. Men's Int'l Prof'l Tennis Council,
    857 F.2d 55 (2d Cir. 1988).......................................................................14

Wade v. Johnson Controls, Inc.,
  693 F.2d 19 (2d Cir. 1982) ...........................................................................................9

### STATE CASES

Amigo Foods Corp. v. Marine Midland Bank-New York,
  39 N.Y.2d 391, 384 N.Y.S.2d 124, 348 N.E.2d 581 (1976)....................................7

Cantor v. Levine,
  115 A.D.2d 453, 495 N.Y.S.2d 690 (2d Dep't 1985).............................................7

Caper v. Nussbaum,
  36 A.D.3d 176, 825 N.Y.S.2d 55 (2d Dep't 2006)...............................................19

Citi Mgmt. Group, Ltd. v. Highbridge House Ogden, LLC,
  45 A.D.3d 487, 847 N.Y.S.2d 33 (1st Dep't 2007).............................................20

Halmar Corp. & Defoe Corp. v. Hudson Founds. Inc.,
  212 A.D.2d 505, 623 N.Y.S.2d 2 (2d Dep't 1995)...............................................7

Jara v. Strong Steel Doors, Inc.,
  16 Misc.3d 1139(A), 851 N.Y.S.2d 58 (N.Y. Sup. Ct. Kings. Co. 2007) .............7

### UNREPORTED CASES

Agfa Corp. v. United Marketing Group, Inc.,
  No. 02 Civ. 8468, 2003 WL 21555087 (S.D.N.Y. July 10, 2003) ......................15

G-I Holdings, Inc. v. Baron & Budd,
  No. 01 Civ. 0216, 2002 WL 31251702 (S.D.N.Y. Oct. 8, 2002) ..........................7

Network Enters. Inc. v. APBA Offshore Prods. Inc.,
  No. 01-11765, 2003 WL 124521 (S.D.N.Y., Jan. 15, 2003) .................................9

Web Mgmt. LLC v. Arrowood Indem. Co.,
  No. 3-07-CV-424, 2008 WL 619310 (S.D.N.Y. Mar. 5, 2008)..............................8

### FEDERAL RULES

FRCP 8(a)(2)  ......................................................................................2, 6, 7, 10, 15

FRCP 12(b)(6)  ......................................................................................2, 6, 7, 9, 10

## PRELIMINARY STATEMENT

Plaintiffs, Progressive Plan Administrators, Inc. ("PPA") and USI Insurance Services LLC ("USI" or "Company") (collectively, the "Plaintiffs"), hereby respectfully submit this Memorandum of Law in support of their opposition to the motion to dismiss[1] of defendants, Kinloch Holdings, Inc. ("Kinloch"), Genatt Associates, Inc. ("Genatt") and Kinloch Consulting Group, Inc. ("Kinloch Consulting") (collectively, the "Corporate Defendants"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP" or "Rule").

For all of the reasons set forth and argued below, the Court should deny the MTD, in its entirety and with prejudice,[2] as the Plaintiffs have met their pleading burden at this stage of the litigation and, concomitantly, have sufficiently alleged claims for both UC and TIPEA against the Corporate Defendants.

## SUMMARY OF ARGUMENT

The Complaint has sufficiently alleged numerous facts demonstrating acts of wrongdoing and unlawful conduct (*see, e.g.,* Complaint, ¶¶ 45-87) committed by Hueber[3] — USI's former employee — both while he was still employed by USI, beginning on or about October 7, 2002 (*see* Complaint, ¶ 16), until and after he resigned his employment at USI, on or about July 5, 2007 (*see id.,* ¶¶ 40-44) and continuing after he shortly thereafter commenced employment at

---

[1] The Corporate Defendants' motion to dismiss ("MTD") consists of a memorandum of law ("MOL") and the affidavit of their counsel, Blair C. Fensterstock, Esq. ("Fensterstock Aff.") which attaches as Exhibit 1 a copy of Plaintiffs' Summons and Complaint ("Complaint") and as Exhibit 2 a copy of the individual defendant's, William J. Hueber's ("Hueber") answer ("Answer") in this action. The MTD seeks to dismiss the sixth and seventh causes of action contained in the Complaint and against the Corporate Defendants — claims of unfair competition ("UC") and tortious interference with prospective economic advantage ("TIPEA"), respectively.

[2] The Plaintiffs respectfully submit to the Court that, at the very least, at this early stage in this litigation, the Court should deny the MTD without any prejudice to either the Corporate Defendants' or the Plaintiffs' rights to file respective motions for summary judgment after the close of discovery in this action.

[3] Defendant Hueber is, appropriately, not party to the MTD and, accordingly, has not sought dismissal of any of Plaintiff's six causes of action brought against him.

Consulting in the capacity of Vice President. *See id.,* ¶¶ 68-69; *see also* Answer, ¶ 69; MOL, p. 2. Despite the Corporate Defendants' contentions that "[w]ith no basis in law or fact, USI attempts to impugn liability upon . . . [them]" (MOL, p. 1), the Plaintiffs have indeed alleged wrongful and unlawful acts committed by the Corporate Defendants sufficient to state and sustain claims for UC and TIPEA against them. *See id.,* ¶¶ 1, 48, 86, 96-99, 118-32.[4]

In summary, the Plaintiff's have sufficiently pled their claims for both UC and TIPEA against the Corporate Defendants, pursuant to FRCP 8(a)(2). Specifically, Plaintiffs have alleged these claims in a concise and simple fashion in a manner providing clear and fair notice to the Corporate Defendants as to the claims as well as the bases for such claims. Plaintiffs have met their burden, particularly at this early stage of this litigation, *i.e.,* without the benefit of having had any discovery to disclose and uncover documents and other information reasonably likely — given the nature of the claims against the Corporate Defendants — to be in the Corporate Defendants sole possession, custody and control. Moreover, under the standard of review pursuant to FRCP 12(b)(6), the Court's properly carried out function, accepting all factual allegations in the Complaint as true and drawing all reasonable inferences in the Plaintiff's favor, dictates a finding that would preclude dismissing Plaintiffs' claims against the Corporate Defendants at this juncture of the litigation.

---

[4] Further with all inferences drawn in favor of the Plaintiffs, it is more than likely if not probable that the Corporate Defendants had full knowledge of Hueber's non-solicitation and non-disclosure agreement with USI ("NSDA"), who, himself, is charged with supplying that information to his new employers. Certainly as a prime competitor of USI, the Corporate Defendants had to have understood the importance and value of USI's confidential and proprietary client account information. In any event, while having knowledge of Hueber's restrictive covenants, the Corporate Defendants incentivized, encouraged and assisted Hueber, in not only breaching his NSDA, but also in violating federal law as well as flouting his common law duties and obligations, for the sole purpose of intending to injure if not cripple USI, and from such wrongful means by which they would ultimately benefit. Once, Hueber began working at the Corporate Defendants, and logically transferring the information misappropriated and converted from USI and detailing the information deleted and destroyed while still employed at USI, the Corporate Defendants continued to both compete and tortiously interfere with USI's business relationships in wrongful and unlawful ways.

## STATEMENT OF KEY FACTS AND ALLEGATIONS

Even a cursory review of the Complaint plainly reveals that Plaintiffs have alleged, with specificity and in a detailed fashion, that Hueber acted in, among other roles, the capacity of an agent for the Corporate Defendants and, in particular, with respect to the facts and circumstances giving rise to Plaintiff's claims for UC and TIPEA against the Corporate Defendants. *See, e.g.,* Complaint, ¶¶ 48, 96. In addition to those facts recited by the Corporate Defendants that are both relevant and accurate,[5] Plaintiffs have alleged facts demonstrating acts or omissions by the

---

[5] For example, the Corporate Defendants recitation of relevant facts in neat and in short fashion, however incomplete and, obviously, self-servingly deceptive intended to downplay the stark allegations of Plaintiff, state that "USI discovered that during Mr. Hueber's employment at USI, Mr. Hueber had deleted files from the computer he used while employed at USI and emailed 36 documents to his personal Optonline email account by email attachment." MOL, p. 2. A quick review of some of these pertinent allegations, as actually stated in the Complaint, reveals the enormity of Hueber's wrongful and unlawful conduct and, as an agent of the Corporate Defendants during this crucial and relevant time period (*see* Complaint, ¶¶ 48, 96) theirs as well. Specifically, Plaintiffs have alleged that:

> Hueber had accessed and e-mailed out to his personal email account, from a USI computer, *36 Excel and Word* documents that resided on a USI computer or computer system.

*Id.,* ¶ 46 (emphasis added).

> . . . *on or about July 5, 2007,* around noon time, *Hueber made mass deletions of files on the USI computer system,* and estimated that there were *more than 11,000 documents* deleted during a time period of about 84 minutes.

*Id.,* ¶ 47 (emphasis added).

> . . . a copy of *Hueber's June 4 e-mail* [to his own personal e-mail account] revealed that among the 36 documents e-mailed out as attachments were items such as *prospects lists, call logs, sales teams assignments lists, a telemarketing sheet, as well as Hoovers services data* (a database manager that provides prospect research information about potential clients; USI paid for a license to use that service and Hueber had no independent right to use that service but for the benefit of USI), which was accessed and compiled through use of USI's account.

*Id.,* ¶ 53 (emphasis added).

> The *prospects list attachment* named "Top 25 Prospects - July 06" contains columns labeled "Company Name," "Contact," which lists the first and last name of the person contacted at the target company, and "Strategy – Plan of Attack," which contain details such as where a company's current insurance is purchased, the renewal dates, *[Hueber's personal] notes such as "wants me to call her in August,"* and "waiting to see if we get invited back to discuss USI services and capabilities."

*Id.,* ¶ 54 (emphasis added).

The above sampling of verbatim quotations from the Complaint, especially when compared to the Corporate Defendants' creative offerings underscore the willful and damaging wrongful and unlawful acts of not only Hueber but also that of the Corporate Defendants — particularly given the dates and timeframes involved relative to

Corporate Defendants that proximately caused irrevocable destruction and misappropriation of USI's confidential and valuable proprietary information and, in fact, have detailed the valuable property misappropriated and converted by Hueber in order to injure Plaintiffs, and then, in linear fashion used for the benefit of the Corporate Defendants[6] — in clear violation, of among other Company policies (*see, e.g.,* ¶¶ 26-39), federal statutory law (*see id.,* ¶¶ 88-107) and his common-law duties and obligations (*see id.,* ¶¶ 108-127), his NSDA with USI (*see id.,* ¶¶ 18-25) to the detriment and damage of USI, over which the Corporate Defendants benefited — at the direction of and as an agent for the Corporate Defendants. *See id.,* ¶¶ 48, 85-87, 96, 118-119, 122-27; *see also* n.5, *supra*.

Moreover, as alleged in the Complaint, the Corporate Defendants, tortfeasors all, actively, through their agent Hueber, by dishonest, unfair, improper and wrongful means, interfered with USI's profitable business relationships with its clients and accounts, causing incalculable, irreparable and, to date, indefinable, damage to USI's business relationships. Moreover, the Corporate Defendants acted with wrongful means by using Plaintiffs' confidential information "to deprive USI of business opportunities that would have been available to them, including business opportunities with USI customers such as ABC Home Furnishings and ABC Carpet & Home (*id.,* ¶ 130) and "with the intent to injure Plaintiffs' future business expectancies

---

Hueber's working for and then resigning from USI and then "shortly thereafter" (MOL, p. 2) commencing work as a Vice President at Kinloch. *See* Answer, ¶ 69. Further, while the Corporate Defendants, understandably, provide no details as to the content of the attachments appended to the 36 e-mails, it is clear to any objective and reasonable reviewer of the facts and claims alleged in the Complaint that Hueber misappropriated, converted and deleted valuable and confidential information for not only his own benefit but for the Corporate Defendants, with their obvious encouragement, inducement and assistance — all to the grave detriment of USI. *See, e.g.,* Complaint, ¶¶ 1, 45-60, 86, 96, 97-99, 118-120, 123-132.

[6]  Plaintiffs, therefore, have adequately pled the elements and established a *prima facie* UC claim against the Corporate Defendants.

with USI customers, including, for example, ABC Home Furnishings and ABC Carpet & Home." *Id.,* ¶ 131; *See also* Complaint, ¶¶ 48, 68-87, 96, 123-125, 128-29, 132; MOL, p. 2.[7]

Further, the plan to have Hueber use the confidential, proprietary and valuable client account information gained exclusively from his working at USI, particularly within Northeast, matches with Kinloch's mission to use Genatt as the platform company for "building its northeast hub" by "systematically expanding the business by rolling in smaller firms and producer teams with complementary products and services," as proudly advertised on one of the Corporate Defendants' website: http://www.kinlochholdings.com/whoWeAre.htm.[8]  Accordingly, to accomplish this mission, the Corporate Defendants induced, encouraged and assisted Hueber in his breaching not only his contract with the Plaintiffs, the NSDA, but also in his flouting of his common law obligations owed to Plaintiffs as well as, not insignificantly, his committing violations of federal statutory law.

In short, all of these key facts and allegations collectively serve to demonstrate the direct and deliberate wrongful and unlawful acts that Hueber committed for his own benefit, as well as for the benefit of the Corporate Defendants who "willfully and knowingly engaged in unfair acts

---

[7]  Plaintiffs, therefore, have adequately pled the elements and established a *prima facie* TIPEA claim against the Corporate Defendants.  Moreover, and adding to the list of USI clients unlawfully solicited by agent Hueber on behalf of the Corporate Defendants is USI client Radian Corp. — about which USI learned that "Hueber had called [Radian]" sometime in late-July 2007, approximately two weeks after he resigned his employment at USI, and just before he officially began his employment at Kinloch Consulting, "to solicit the sale of services."  The Corporate Defendants' minimization of the allegations of both their own and Hueber's conduct by stating "[Plaintiffs'] allegations against the Corporate Defendants are based upon USI's speculation that <u>two</u> accounts, which used to be serviced by USI, were improperly solicited by Mr. Hueber" and that "USI attempts to create a fabricated claim against the Corporate Defendants solely because <u>two</u> clients have voluntarily ceased doing business with [USI]" (MOL, p. 4) (emphasis in original) grossly and importantly misrepresents both, in tone and quantity, the allegations in the Complaint.  In any event, underscoring Plaintiffs' need for and entitlement to discovery in this case, is the nature of the claims against both Hueber and the Corporate Defendants, the obvious relationship between him and them and that it is reasonably likely that, where there has been no discovery and where the evidence of the conversion, misappropriation and full extent of the injury incurred by Plaintiffs and, concomitantly, the benefit enjoyed by the Corporate Defendants lies within their exclusive possession, custody and control.

[8]  Although not specifically alleged in the Complaint, the Plaintiffs respectfully ask the Court to take judicial notice of the Corporate Defendants' *modus operandi* — published and accessible to all of the public — in drawing all reasonable and plausible inferences in favor of the Plaintiffs once the Court accepts all factual allegations in the Complaint as true, as it is required to do in evaluating the MTD.

or practices and unfair methods of competition, including the bad faith misappropriation of Plaintiffs' proprietary Confidential Information and good will." *Id.* ¶ 123.  These unethical, commercially immoral, and anti-competitive practices have caused irreparable harm, and continue to do so as the Corporate Defendants still profit from these stolen accounts financially, and through undeserved good will, with, concomitantly, the Plaintiffs remaining injured and damages compounding incalculably against each day that the Corporate Defendants' brazen acts continue unabated. *See id.* ¶¶ 124-32.

**ARGUMENT**

**I**

**THE APPLICABLE LEGAL STANDARDS DEMAND A FINDING THAT PLAINTIFFS HAVE SUFFICIENTLY PLED THEIR CLAIMS AGAINST THE CORPORATE DEFENDANTS**

**A.    Plaintiff's Pleading Burden Under Rule 8(a)(2)**

Plaintiffs have met their pleading burden at this stage of the litigation.  Specifically, under Rule 8(a)(2) of the Federal Rules of Civil Procedure, all that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *see also In re* Adelphia Communications Corp., 365 B.R. 24, 33 (S.D.N.Y. 2007).  This statement need only provide the Corporate Defendants with fair notice of the claims and their bases. *See* Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007).  Recently, in Twombly v. Bell Atl. Corp., 127 S.Ct. 1955 (2007), the Supreme Court opined that, in order to survive an attack by a Rule 12(b)(6) motion a complaint, must contain more than just "labels, conclusions and a formulaic recitation of the elements of a cause of action," it need not contain "detailed factual allegations." *Id.* at 1964-65 (internal citations omitted).  The Court explained that a complaint must contain factual allegations which are "enough to raise a right to relief above the speculative

level, on the assumption that all the allegations in the complaint are true." *Id.,* at 1964-65. This is consistent with the Supreme Court's earlier decision in <u>Swierkiewicz v. Sorema</u>, 534 U.S. 506, (2002), where it explained that a court's dismissal of a complaint under Rule 12(b)(6) is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations". *Id.* at 512.

In the instant matter, Plaintiffs have presented all of the essential underlying facts (*see, e.g.,* Complaint, ¶¶ 1, 86, 98-99, 118-19, 123-132) — those not hidden from them or otherwise within the exclusive knowledge, possession and control of the Corporate Defendants[9] or, importantly, Hueber who "while [he was] still employed at USI, he acted as an agent for [the Corporate Defendants]" (*Id.,* ¶ 48) — as well as the resulting claims against the Corporate Defendants. *Id.,* ¶¶ 122-32. Such detail has clearly and obviously placed the Corporate Defendants on fair notice as to what acts or omissions are alleged to have been wrongful and unlawful and serve as the legal bases for relief with respect to the Plaintiff's claims of UC and TIPEA against the Corporate Defendants. To this end, and once a plaintiff meets his burden

---

[9] Courts in New York have regularly denied dispositive motions seeking dismissal of plaintiffs' pleadings where key documents and other information necessary to allege facts more fully in support of various causes of action or to fully oppose defendants' motions were reasonably likely in the possession, custody or control of the defendants. *See, e.g.,* <u>G-I Holdings, Inc. v. Baron & Budd</u>, No. 01 Civ. 0216, 2002 WL 31251702, at *6 (S.D.N.Y. Oct. 8, 2002), (denying defendants' motion with leave to renew upon the close of specified discovery); <u>Halmar Corp. & Defoe Corp. v. Hudson Founds., Inc.</u>, 212 A.D.2d 505, 506, 623 N.Y.S.2d 2, 3 (2d Dep't 1995) (denying motion to dismiss and permitting discovery where plaintiff "made a sufficient showing that facts essential to establish such a direct link [between the defendants' actions] may be uncovered during discovery proceedings"). *See also* <u>Cantor v. Levine</u>, 115 A.D.2d 453, 454, 495 N.Y.S.2d 690, 691 (2d Dep't 1985) (affirming the denial of motion to dismiss and reasoning that "[w]hen knowledge of facts is necessary for a party to oppose a motion to dismiss, and those facts are within the sole knowledge or possession of the movant, discovery is sanctioned if it is demonstrated that such facts may exist") (internal citation omitted); <u>Jara v. Strong Steel Doors, Inc.</u>, 16 Misc.3d 1139(A), 851 N.Y.S.2d 58 (N.Y. Sup. Ct. Kings. Co. 2007) (same); *accord* <u>Amigo Foods Corp. v. Marine Midland Bank-New York</u>, 39 N.Y.2d 391, 395, 384 N.Y.S.2d 124, 348 N.E.2d 581 (1976) (reversing the dismissal of plaintiff's complaint, denying defendants' motion and reasoning that "discovery should be permitted . . . [where] a party demonstrates that facts may exist in opposition to a motion to dismiss, discovery is sanctioned . . . . [Plaintiffs] have alleged an agency relationship exists between [the various defendants] and, from their pleadings . . ., it is obvious that their position is not frivolous"). For these reasons, and consistent with the rulings and decisions cited immediately above, the Court should deny the MTD.

under Rule 8(a)(2) — alleging enough facts to plausibly suggest a valid claim for relief and raising a reasonable expectation that the discovery process will further reveal additional information and evidence which would support the plaintiff's claims — the complaint should overcome any arguments in support of a motion made under Rule12(b)(6).

### B.    The Court's Role in Deciding a Motion Under Rule 12(b)(6)

When deciding a motion to dismiss under Rule 12(b)(6), a court is required to review and construe the Complaint broadly and liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the [pleader's] favor." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002); *accord* Jackson Nat'l Life Ins. Co. v. Merrill, Lynch & Co., 32 F.3d 697, 699-700 (2d Cir. 1994). In practical terms, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the [plaintiff] is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir.1995) (*quoting* Scheuer v. Rhodes, 416 U.S. 232, 235-36 (1974)). To this end, the court's role in deciding a Rule 12(b)(6) motion is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Festa v. Local 3 Int'l Bhd. of Elec. Workers, 905 F.2d 35, 37 (2d Cir.1990); *see also* Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984) (explaining that the court's "function [on a] motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof" (internal quotations and citation omitted)); Astroworks v. Astroexhibit, Inc., 257 F. Supp. 2d 609, 614 (S.D.N.Y. 2003). It is axiomatic, therefore, that "[t]he pleading shall not be dismissed merely because recovery seems remote or unlikely." Web Mgmt. LLC v. Arrowood Indem. Co., No. 3:07-CV-424, 2008 WL 619310, at *2 (S.D.N.Y. Mar. 5, 2008) (internal citation omitted). Such a challenging determination on limited facts at such an early stage in the proceedings makes it

"difficult to resolve [the necessary questions] as a matter of law." *In re* Indep. Energy Holdings PLC, 154 F. Supp. 2d 741, 747 (S.D.N.Y. 2001).

In fact, it is well-appreciated that "[w]hen a motion to dismiss is brought prior to an answer and discovery, ***a court is loath to grant the motion.***" Felix-Torres v. Graham, 521 F. Supp. 2d 157, 162 (N.D.N.Y. 2007) (emphasis added) (*citing* Lugo v. Senkowski, 114 F. Supp. 2d 111, 113 (N.D.N.Y. 2000) *citing* Wade v. Johnson Controls, Inc., 693 F.2d 19, 22 (2d Cir. 1982)); *accord* Cleveland v. Caplaw Enters., 448 F.3d 518, 523 (2d Cir. 2006) (reversing the dismissal of plaintiff's complaint and holding "it was error to dismiss the complaint at the pleadings stage" and before any discovery commenced). In this regard, it is of no matter that the plaintiff is unlikely to ultimately prevail, but only that the defendant cannot demonstrate that the plaintiff is certainly unable to ultimately prove facts which would entitle him to relief. *See id.; see also* Egelston v. State Univ. College, 535 F.2d 752, 754 (2d Cir. 1976) (*citing* Cooper v. Pate, 378 U.S. 546, 546 (1964)); *accord* Petruso v. Schlaefer, 474 F. Supp. 2d 430, 441 (E.D.N.Y. 2007) (denying defendants' motion to dismiss, allowing discovery to proceed and reasoning that "the allegations is support of a conspiracy are sufficient to survive this motion to dismiss. Whether those allegations remain sufficient after discovery is an open question"); Network Enters., Inc. v. APBA Offshore Prods., Inc., No. 01-11765, 2003 WL 124521, at *3 (S.D.N.Y., Jan. 15, 2003) (denying defendant's motion to dismiss, applying the "familiar principles" of a Rule 12(b)(6) analysis and determining that "it is readily apparent that [Plaintiff's] allegations, while understandably sparse, are sufficient to survive a motion to dismiss").

Accordingly, given the foregoing and without the benefit of any discovery in this case and with all reasonable inferences of the allegations in the complaint being drawn in favor of the

Plaintiffs, the Court should find that the Plaintiffs have sufficiently pled their UC and TIPEA claims against the Corporate Defendants and deny the MTD.[10]

## II

## PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A CLAIM FOR UC AGAINST THE CORPORATE DEFENDANTS

As set forth above (*see* Summary of Argument and Statement of Key Facts and Allegations and attendant footnotes, *supra*), the Plaintiffs have sufficiently pled a claim for UC against the Corporate Defendants. In particular, Plaintiffs have alleged facts — in the degree, clarity and specificity required by Rule 8(a)(2) — demonstrating acts or omissions by the Corporate Defendants that proximately caused irrevocable destruction and misappropriation of USI's confidential and valuable proprietary information and, in fact, have detailed the valuable property misappropriated and converted by Hueber in order to injure Plaintiffs, and then, in linear fashion used for the benefit of the Corporate Defendants. *See* nn.4-5, *supra,* and accompanying text. The Corporate Defendants conveniently and intentionally ignore the alleged agency relationship between Hueber and them (*see e.g.,* Complaint, ¶¶ 48, 96, 129), and expect the Court naively to view only selected allegations of the Complaint and, even with those, in a vacuum devoid of any logical and inferential deductions (*see* MOL, p. 5), despite the well-accepted standard of review under Rule 12(b)(6). *See* Argument I.A. The Plaintiffs have

---

[10] The evidence, particularly under the relevant pleading standard of Rule 8(a)(2) and standard of review under Rule 12(b)(6) sufficiently establishes, at the very least, and without the Court needing to delve any further, that Plaintiffs have stated a *prima facie* case for the inextricable relationship between each of the Corporate Defendants and, more pertinent to the MTD, that there was indeed an agency relationship between the Corporate Defendants and Hueber while he was employed at USI. Accordingly, on these bases and alleged facts alone, the Plaintiffs have pled enough to survive the attack of this MTD. *See, e.g.,* Carruthers v. Flaum, 365 F. Supp. 2d 448, 472 (S.D.N.Y. 2005) (denying defendants' dispositive motion to dismiss plaintiff's claims and determining that the factual allegation in the complaint of an agency relationship was sufficient to withstand the motion to dismiss); *see also* Mull v. Colt, 31 F.R.D. 154, 163 (S.D.N.Y. 1962) (denying defendants' motions to dismiss amid allegations of corporate agency and explaining that "[w]hether an agency in fact existed . . . [is a] question[] of fact which plaintiff will have to prove at trial" and, accordingly and in equity, "[plaintiff's] opportunity to do so may not be foreclosed peremptorily by these motions to dismiss").

clearly and sufficiently explained the unfair acts, practices and methods employed by the Corporate Defendants in support of the UC claim against them. *See, e.g.,* ¶¶ 48, 85-87, 96, 118-119, 122-27; *see also* nn.4-6, *supra*.

Plaintiff's have met the pleading standard for establishing their UC claim against the Corporate Defendants under New York law. As explained in <u>Astroworks, Inc.v. Astroexhibit, Inc.,</u> 257 F. Supp. 2d 609 (S.D.N.Y. 2003), a case cited and relied upon by the Corporate Defendants (*see* MOL, p. 5), "[t]he central principle underlying a claim for unfair competition under new York law is that one may not misappropriate the results of the labor, skill and expenditures of another in bad faith." *Id.* at 619 (internal citation and quotations omitted). Refining the standard, the Court reasoned that "[while] unfair competition may take many forms, the pivotal question is always the same: ***whether the conduct complained of is fair or unfair***." *Id.* (emphasis added) (internal citations and quotations omitted); *accord* <u>Conmed Corp. v. ERBE Electromedizin GmbH</u>, 129 F. Supp. 2d 461, 470 (N.D.N.Y. 2001) (denying in its entirety competitor's motion to dismiss plaintiff's complaint, finding unconvincing defendants' characterization of plaintiff's' allegation of bad faith as conclusory and holding that ***"the plaintiffs' . . . allegation of bad faith on the part of defendants is sufficient (at this stage of the litigation, where discovery has yet to commence) to state a claim for relief under a theory of common law unfair competition"***) (emphasis added).

Plaintiffs have alleged facts in the Complaint precisely demonstrating that the Corporate Defendants' competition with USI by methods and means of bad faith misappropriation is inherently unfair — to the great detriment and injury to USI. *See, e.g.,* Complaint, ¶¶ 1, 48, 86, 96-99, 118-21, 122-27, 128-132. For example, the Plaintiffs have specifically alleged the

11

following, among other bad faith and unfair methods and means utilized by the Corporate Defendants to unfairly compete with USI:

> . . . *while Hueber was still employed at USI, he acted as an agent for Kinloch, or one of its affiliates.*

*Id.,* ¶ 48 (emphasis added).

> *For the benefit of Kinloch and/or one of its affiliates, Hueber acted as an agent, knowingly and with intent to defraud,* and did access a protected USI computer without authorization or exceeding authorized access, and by means of such conduct furthered the intended fraud.

*Id.,* ¶ 96 (emphasis added).

> . . . *Hueber accessed and transmitted commands and information for his own benefit and for the benefit of his new employer, Kinloch and/or one of its affiliates,* but against the interest of USI, while he was still employed by USI.

*Id.,* ¶ 118 (emphasis added).

> . . . *Hueber acted to misappropriate and/or utilize USI's Confidential Information for his own benefit and the benefit of his new employer,* and in violation of his NSDA, *both before and after his employment with the USI Companies terminated,* for the purpose of soliciting USI Client Accounts.

*Id.,* ¶ 119 (emphasis added).

> . . . *Defendants have willfully and knowingly engaged in unfair acts or practices and unfair methods of competition,* including the bad faith misappropriation of Plaintiffs' proprietary Confidential Information and good will.

*Id.,* ¶ 123 (emphasis added).

> *With knowledge of the Plaintiffs' Confidential Information, including, for example, Client Account contact, policies and related information, obtained due to wrongful means, Defendants have tortiously interfered with Plaintiffs' prospective economic advantage.*

*Id.,* ¶ 129 (emphasis added).

> *These continuing practices are anti-competitive, commercially immoral, unethical, and oppressive, and have caused and threaten to cause substantial additional injury to Plaintiffs.* As a result of such violations, Defendants have gained and will continue to gain unjust profits and undeserved good will.

*Id.,* ¶ 124 (emphasis added).

In *Astroworks,* the Court, on pleadings less specific and detailed than those at issue in the instant matter, denied that part of plaintiff's motion to dismiss defendant/third-party plaintiff's unfair competition claim. 257 F. Supp. 2d at 619. Specifically, the Court, assuming all allegations in the complaint to be true, found that the third-party plaintiff "ha[d] adequately *pled* a claim of unfair competition" when he alleged that his "confidential and proprietary" idea was exploited by the plaintiff. *Id.* (emphasis in original). Moreover, and importantly, the Court explained that such alleged misappropriation "exempli[fies] just the sort of commercial immorality that is the touchstone of unfair competition" and admonished the movant's attempts to "rewrite [] the Complaint and then attempt to discredit that fictitious pleading; they must take the Complaint [] as [it is] written." *Id.* at 620 (internal citations and quotations omitted).

Much like the Plaintiffs in the instant matter, in Am. Bldg. Maint. Co. of NY v. Acme Prop. Servs. Inc., 515 F. Supp. 2d 298, 312 (N.D.N.Y. 2007) (denying defendants' motions to dismiss plaintiff's claim for unfair competition), the plaintiff, "invoking a misappropriation theory" in support of its claim for unfair competition, "assert[ed] that [Defendants] misappropriated its customer information, business opportunities under negotiation, and copies of customer contracts and used that information to compete against it." *Id.* at 311. The court offered that misappropriated customer information "can give rise to a claim of unfair competition . . . where [it] has several attributes of a trade secret and is being used in breach of an agreement, confidence, or duty, or as a result of discovery by improper means." *Id.* Plainly, as demonstrated and argued above, and as fully set forth in the Complaint, the Plaintiffs have alleged with specificity, the improper and unlawful means used by the Corporate Defendants in misappropriating the Plaintiff's trade secrets, *i.e.,* USI's confidential, proprietary, valuable and closely guarded and heavily protected confidential current and prospective client account

information.  Moreover, USI has also identified as best it could at this early and pre-discovery stage of the proceedings, given the nature of the claims against the Corporate Defendants, and with much of the relevant evidence, documents and other information, in the sole possession, custody and control of the Corporate Defendants, the identity of the trade secrets.  *See, e.g.,* Complaint, ¶¶ 45-48, 49-60, 68-87, 96-100, 122-127, 128-132; *see also* Summary of Argument and Statement of Key Facts and Allegations, and attendant footnotes, *supra; accord* 777388 Ontario Ltd. v. Lencore Acoustics Corp., 105 F. Supp. 2d 56, 61-62 (E.D.N.Y. 2000) (denying defendants' motion to dismiss plaintiff's claim for unfair competition where facts were alleged to sufficiently make out a *prima facie* case as a result of defendants' alleged misappropriation and use of plaintiffs' proprietary information and trade secrets given to defendants by plaintiffs in confidence); Excellus Health Plan, Inv. v. Tran, 287 F. Supp. 2d 167, 178 (W.D.N.Y. 2003) (denying plaintiff's motion to dismiss, holding that defendants properly alleged counterclaim for unfair competition where defendants alleged that the plaintiff "(1) misappropriate[d] the skill, expenditures, and labor of the [defendants], (2) to its own commercial advantage, [and] (3) in bad faith").[11]

---

[11]  Not surprisingly, and as easily demonstrated, no matter which version of the elemental standard detailed by the various courts necessary to sufficiently plead a *prima facie* claim of  common law unfair competition, the Plaintiffs meet the challenge, burden and requirements in stating their UC claim against the Corporate Defendants.  This holds true even under the standard detailed in Commercial Data Servers, Inc. v. IBM Corp, 166 F. Supp. 2d 891 (S.D.N.Y. 2001), a case cited and relied upon by the Corporate Defendants (*see* MOL, p. 5), in which the Court stated that:

> under New York law, an unfair competition claim must be grounded in either deception or appropriation of the exclusive property of the plaintiff.  The essence of an unfair competition claim is the bad faith misappropriation of the labors and expenditures of another . . . .  In order properly to allege the misappropriation aspect of an unfair competition claim, a plaintiff is required to plead (1) acts or omissions by defendants that proximate that proximately caused a misappropriation, and (2) the property or benefit misappropriated.

*Id.,* at 894 (internal citations and quotations omitted); *accord* Volvo N. Am. Corp v. Men's Int'l Prof'l Tennis Council, 857 F.2d 55, 75 (2d Cir. 1988) (vacating the dismissal of plaintiffs' claims for unfair competition and remanding with instruction that plaintiffs' file a second amended complaint for the purpose of specifying the misappropriated property). In any event, and for all of the reasons heretofore stated, the Plaintiffs have sufficiently pled and specifically detailed the wrongful and unlawful acts of the Corporate Defendants as well as the valuable and exclusive property of USI, as much as is known at this point in time, that was misappropriated by the Corporate

Accordingly, and for all of the information, reasons and arguments set forth above, the Court should deny, with prejudice, that portion of the MTD seeking to dismiss the Plaintiffs' UC claim against the Corporate Defendants because Plaintiffs have sufficiently pled this claim against them.

## III

## PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A CLAIM FOR TIPEA AGAINST THE CORPORATE DEFENDANTS

As argued above (*see* Summary of Argument and Statement of Key Facts and Allegations and attendant footnotes, *supra*), the Plaintiffs have sufficiently pled a claim for TIPEA against the Corporate Defendants.  In particular Plaintiffs have alleged facts — in the degree, clarity and specificity required by Rule 8(a)(2) — sufficient to set forth a claim of TIPEA against the Corporate Defendants because the Plaintiffs have unquestionably detailed the Corporate Defendants' "interfer[ence] with business relations existing between plaintiff and a third party, either with the sole purpose of harming plaintiff or by means that are dishonest, unfair or in any other way improper."  Hubbell Inc. v. Pass & Seymour, Inc., 833 F. Supp. 955, 963 (S.D.N.Y. 1995) (internal citations and quotations omitted) (denying motion to dismiss claim for tortious interference with prospective economic advantage).  As laid out in Agfa Corp. v. United Marketing Group, Inc., No. 02 Civ. 8468, 2003 WL 21555087 (S.D.N.Y. July 10, 2003), "[u]nder new York law, the elements of a claim for tortious interference with contract are: (1) the existence of a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional procuring of the breach of that contract; and (4) damages.

---

Defendants.  *See, e.g.,* Complaint, ¶¶ 45-48, 49-60, 68-87, 96-100, 122-127, 128-132; *see also* Summary of Argument and Statement of Key Facts and Allegations, and attendant footnotes, *supra*.

To state a claim for tortious interference with prospective economic advantage, a plaintiff must also plead facts that demonstrate that the defendant acted with the sole purpose of harming the plaintiff *or* that the defendant used dishonest, unfair or improper or wrongful means." *Id.* *4 (emphasis added) (internal citations and quotations omitted) (denying defendant's motion to dismiss plaintiff's claim for tortious interference with prospective economic advantage where the complaint contained allegations stating that the defendants "maliciously and intentionally interfered with Agfa's prospective economic relationship with its authorized dealer"); *accord* PKG Group, LLC v. Gamma Croma, S.p.A., 446 F. Supp. 2d 249, 251-52 (S.D.N.Y. 2006) (explaining that "acts motivated by economic self-interest are not ones taken solely out of malice" but, in any event, denying the defendants' motion to dismiss plaintiff's claim for tortious interference with prospective economic advantage where "given the limited demands of Rule 8, [plaintiff's allegations] "are sufficient, albeit barely, to provide fair notice to defendants as to the conduct upon which [plaintiff] bases its claims").

More specifically, with a liberal reading of the Complaint, taking all allegations as true and drawing all inferences in favor of the Plaintiffs, the Complaint, separately and alternatively, based upon the various acts of the Corporate Defendants, details that they acted both (i) with the sole purpose of harming the Plaintiffs; *and* (ii) that they used dishonest, unfair, improper or wrongful means toward the Plaintiffs. *See, e.g.,* Complaint, ¶¶ 1, 18-39, 40-44, 45-60, 68-87; 128-32. For example, and in particular, the Plaintiffs have specifically alleged the following, malicious, unfair, improper or wrongful means, utilized by the Corporate Defendants to tortiously interfere with USI's prospective economic advantage:

> *After Hueber's departure, in mid-July 2007, USI discovered that, while still employed by USI, he had deleted thousands of files* from the USI computer system, and had used his USI e-mail account to send multiple documents that

resided on USI computers to his own personal Optonline e-mail account by e-mail attachment.

Complaint, ¶ 45 (emphasis added).

The Information Technology (IT) department at USI *discovered that on June 4, 2007, at 10:01am, Hueber had accessed and e-mailed out to his personal email account, from a USI computer, 36 Excel and Word documents* that resided on a USI computer or computer system.

*Id.,* ¶ 46 (emphasis added).

The IT department at USI discovered that on or about July 5, 2007, around noon time, *Hueber made mass deletions of files on the USI computer system, and estimated that there were more than 11,000 documents deleted during a time period of about 84 minutes.*[12]

*Id.,* ¶ 47 (emphasis added).

. . . *while Hueber was still employed at USI, he acted as an agent for Kinloch, or one of its affiliates.*

*Id.,* ¶ 48 (emphasis added).

. . . *a copy of Hueber's June 4 e-mail, . . . revealed that among the 36 documents e-mailed out as attachments were* items such as prospects lists, call logs, sales teams assignments lists, a telemarketing sheet, as well as Hoovers services data (a database manager that provides prospect research information about potential clients; USI paid for a license to use that service *and Hueber had no independent right to use that service but for the benefit of USI), which was accessed and compiled through use of USI's account.*

*Id.,* ¶ 53 (emphasis added).

*The prospects list attachment named "Top 25 Prospects - July 06" contains columns labeled "Company Name," "Contact," which lists the first and last name of the person contacted at the target company, and "Strategy – Plan of Attack,"* which contain details such as where a company's current insurance is purchased, the renewal dates, [*and Hueber's personal] notes such as "wants me to call her in August," and "waiting to see if we get invited back to discuss USI services and capabilities."*

---

[12] Logically and obviously, and with Hueber acting and operating as an agent for the Corporate Defendants (*see id.,* ¶¶ 48, 96), the deletion of 11,000 e-mails in a span of less than one-and-a-half-hours could not have been committed and intended for any other purpose than to harm the Plaintiffs. On the other hand, other allegations in the Complaint, a sampling of which is provided verbatim immediately above, adequately demonstrate the Corporate Defendants' interference with the Company's prospective economic advantages and opportunities were indelibly stained by misconduct amounting to either a crime or an independent tort. Accordingly, the Corporate Defendants' cited authority is unavailing (*see* MOL, pp. 8-10) and distinguishable is this instant matter, like all others, a fact-sensitive, stand alone analysis.

*Id.,* ¶ 54 (emphasis added).

ABC Home Furnishings appeared in the attachment named "Email addresses.xls," which document listed the contact's first and last names, e-mail address, company name, parent name, and level of access.  There were four entries for ABC Home Furnishing Co. on this document.  There was also one entry for Radian Corp. in the same document.

*Id.,* ¶ 55.

In the attachment named "email address.doc," two e-mail addresses for contacts at Radian appear, and five e-mail addresses for contacts at ABC Carpet & Home appear.

*Id.,* ¶ 56.

In the attachment named "Bill's list.xls," three e-mail addresses for contacts at ABC Carpet & Home appear.

*Id.,* ¶ 57.

In the attachment named "private Co from 100 to 5000 ee's in NYC LI.htm," ABC Home Furnishings, Inc. appears, along with the headquarters address, main phone number, and main fax number.

*Id.,* ¶ 58.

In the attachment named "Hoovers Prospects 251 to 1000 NY NJ CT.htm," ABC Home Furnishings, Inc. appears three times, along with each contact's name and title, the company address, phone number, fax number, web address, number of employees, and type of company.

*Id.,* ¶ 59.

***For the benefit of Kinloch and/or one of its affiliates, Hueber acted as an agent, knowingly and with intent to defraud,*** and did access a protected USI computer without authorization or exceeding authorized access, and by means of such conduct furthered the intended fraud.

*Id.,* ¶ 96 (emphasis added).

. . . ***Hueber accessed and transmitted commands and information for his own benefit and for the benefit of his new employer, Kinloch and/or one of its affiliates,*** but against the interest of USI, while he was still employed by USI.

*Id.,* ¶ 118 (emphasis added).

. . . ***Hueber acted to misappropriate and/or utilize USI's Confidential Information for his own benefit and the benefit of his new employer,*** and in violation of his NSDA, ***both before and after his employment with the USI Companies terminated,*** for the purpose of soliciting USI Client Accounts.

*Id.,* ¶ 119 (emphasis added).

> *With knowledge of the Plaintiffs' Confidential Information, including, for example, Client Account contact, policies and related information, obtained due to wrongful means, Defendants have tortiously interfered with Plaintiffs' prospective economic advantage.*

*Id.,* ¶ 129 (emphasis added).

> *. . . Defendants have used Plaintiffs' Confidential Information to interfere with Client Account relationships and to deprive USI of business opportunities* that would have been available to them, including business opportunities with USI customers such as ABC Home Furnishings and ABC Carpet & Home, for example.

*Id.,* ¶ 130 (emphasis added).

> *These acts were committed with the intent to injure Plaintiffs' future business expectancies with USI customers,* including, for example, ABC Home Furnishings and ABC Carpet & Home, and have succeeded in doing so.

*Id.,* ¶ 131 (emphasis added).

> *As a direct and foreseeable result of Defendants' conduct, Plaintiffs have been injured and suffered damages,* including punitive damages, in an amount to be determined at trial, but in all events not less than $140,000.

*Id.,* ¶ 132 (emphasis added).

In Caper v. Nussbaum, 36 A.D.3d 176, 204, 825 N.Y.S.2d 55, 78 (2d Dep't 2006) (reversing the dismissal of plaintiff's claim for tortious interference with prospective economic advantage), the Second Department found for the plaintiff and denied the defendant's cross-motion to dismiss where the plaintiff alleged in her complaint that "she was deprived of the economic advantages of refinancing that she otherwise would have been able to enjoy" but for the defendant's involvement with her prospective lender. *See id.* Similarly, and on facts much less egregious than those of the Corporate Defendants in the instant matter, the First Department denied motions to dismiss the plaintiff's claim for tortious interference with economic advantage where allegations that wrongful means were utilized to prevent tenant from possessing the garage premises, reasoning that the economic advantage is the "los[t] rent . . . with the passage

of each day." <u>Citi Mgmt. Group, Ltd. v. Highbridge House Ogden, LLC</u>, 45 A.D.3d 487, 488, 847 N.Y.S.2d 33 (1st Dep't 2007).  Clearly, then, the Plaintiffs have alleged pernicious acts committed by and under the auspices of the Corporate Defendants to the abject detriment of USI vis-à-vis its relationships with its clients.

Accordingly, and for all of the reasons and arguments set forth above, the Court should deny, with prejudice,  that portion of the MTD seeking to dismiss the Plaintiffs' TIPEA claim against the Corporate Defendants because Plaintiff's have sufficiently pled this claim against them.

## CONCLUSION

Based upon all of the information and arguments set forth above, the Court should find that the Plaintiffs have sufficiently pled their claims for UC and TIPEA against the Corporate Defendants and, accordingly, should deny the Corporate Defendants' MTD, in its entirety and with prejudice.

Dated:  New York, New York
        April 29, 2008

Respectfully submitted,

HOLLAND & KNIGHT LLP

By: _____
        Frederick D. Braid
        fred.braid@hklaw.com

        Howard Sokol
        howard.sokol@hklaw.com

        Colleen A. Sorrell
        colleen.sorrell@hklaw.com

195 Broadway, 24th Floor
New York, New York 10007
(212) 513-3200 (telephone)
(212) 385-9010 (facsimile)

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Frederick D. Braid, hereby certify that on April 29 2008 I served a true and accurate copy of PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO DISMISS OF DEFENDANTS KINLOCH HOLDINGS, INC., GENATT ASSOCIATES, INC. AND KINLOCH CONSULTING GROUP, INC. upon the following:

> Blair C. Fensterstock, Esq.
> Jeanne M. Valentine, Esq.
> FENSTERSTOCK & PARTNERS LLP
> 30 Wall Street, 9th Floor
> New York, New York 10005

by ECF filing and U.S. First Class Mail to the address set forth immediately above.

I declare under penalties of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated:  New York, New York
   April 29, 2008

         _____
         FREDERICK D. BRAID

# 5288373_v2

22